Hyman SHICK and Mona Shick, Plaintiffs, Appellants,

v.

FARMERS HOME ADMINISTRATION OF the UNITED STATES DEPARTMENT OF AGRICULTURE, et al., Defendants, Appellees.

No. 84–1343.

United States Court of Appeals, First Circuit.

Argued Sept. 13, 1984.

Decided Nov. 8, 1984.

Carolyn Grace, Boston, Mass., with whom Audrey Zucker and Shapiro & Grace, Boston, Mass., were on brief for appellants.

Joan I. Milstein, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief for appellees.

Arthur P. Kreiger, Boston, Mass., with whom Palmer & Dodge and Marjorie

Heins, Boston, Mass., were on brief for American Civil Liberties Union and Civil Liberties Union of Massachusetts, amici curiae.

Before BOWNES, Circuit Judge, ALD-RICH and SKELTON,* Senior Circuit Judges.

SKELTON, Senior Circuit Judge.

In this case, the plaintiffs Hyman Shick and wife, Mona Shick (Plaintiffs, the Shicks or Shick) sued the Farmers Home Administration of the U.S. Department of Agriculture (FmHA) for the recovery of their family farm purchased by FmHA at a third party foreclosure auction sale, and for a temporary restraining order (TRO), preliminary and permanent injunctions, and other relief. They also seek damages in the sum of three million dollars from John R. Block, Secretary of the U.S. Department of Agriculture and the same amount from Charles W. Schuman, Administrator of FmHA, both of whom are sued only in their official capacities, and a like sum from each of the following officers of the FmHA: William Krause, Director, Emergency Loan Division; William E. Curry, State Director; Robert Pratt, Farmer Program Chief; Richard C. Wilson, Farmer Programs Specialist; Everett C. Paluska, State Director; Richard A. Lavoie, District Director; and Richard J. Burke, Farmer Programs Specialist, all of whom were sued in their individual capacities.

The Shicks allege that their property was taken in violation of the Consolidated Farm and Rural Development Act, the Agricultural Credit Act, 7 U.S.C. §§ 1921 *et seq.*, 7 U.S.C. § 1981a, and the Fifth Amendment to the U.S. Constitution. They allege further that the individual defendants conspired with each other and with others to deprive the Shicks of their property, and that they acted with malice and bad faith.

The individual defendants moved to dismiss the complaint to the extent it sues them in their official capacities. The seven individuals who were sued in their individual capacities moved to dismiss the complaint on the ground that the plaintiffs have failed to state a claim against them with sufficient specificity which would subject them to liability. The FmHA has not filed an answer, but filed a motion to dismiss the complaint on the ground that the plaintiffs had not exhausted their administrative remedies. There has been no trial on the merits.[1]

The case came before the district court on defendants' motion to dismiss. The court granted FmHA's motion and dismissed the case on the ground that the plaintiffs had failed to exhaust their administrative remedies, which failure is described *infra*. 583 F.Supp. 534 (D.Mass.1984). Having granted FmHA's motion, the court also granted the motion of the individual defendants and dismissed the case as to them.

The facts giving rise to this case are substantially as follows. Plaintiffs have owned and operated a 292-acre commercial dairy farm in Wayland, Massachusetts since 1939. In December 1978, plaintiffs borrowed $1,250,000 from the John Hancock Mutual Life Insurance Co. ("John Hancock"), securing the loan by a real estate mortgage on the Shick farm. In February 1979, plaintiffs borrowed $400,000 from the FmHA pursuant to the Emergency Agricultural Credit Adjustment Act of 1978, 7 U.S.C. §§ 1961 *et seq.* In February 1980, plaintiffs borrowed another $100,000 from the FmHA pursuant to the Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1941 *et seq.* The federal loans were secured by security interest in the plaintiffs' farm junior to the first mortgage held by John Hancock, and by a first chattel mortgage on certain farm equipment and all livestock. Plaintiffs consolidated

---

* Of the Federal Circuit, sitting by designation.

1. An evidentiary hearing was held before a magistrate on plaintiffs' request for a TRO and preliminary and permanent injunctions, which re-

quest was denied by the magistrate for reasons stated in his written opinion contained in the record.

the federal loans in February 1980, agreeing to pay the FmHA $6,052 each month for eleven months and then $5,212 each month until the loans were paid off. Both loans were secured by a mortgage on the Farm junior to the John Hancock mortgage. In addition, both loans were secured by a first chattel mortgage on all livestock and farm equipment owned or to be acquired by the Shicks. Pursuant to the security agreements with the FmHA, the Shicks agreed, among other things, to "not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest therein, or permit others to do so, without the prior *written* consent of the Secured Party ...." The failure to comply with that obligation constituted a default under the agreements for which the FmHA could declare the unpaid balance of the notes "due and payable." The Shicks also agreed to use the FmHA loans to buy farm equipment and 375 productive milk cows, and further agreed to keep that number of productive cows on the farm at all times in the operation of their dairy business.

In May 1980, plaintiffs received a thirty-day notice of the FmHA's decision to accelerate the consolidated federal loans on account of plaintiffs' "failure to protect the government's security property" and "failure to make required payments." At and prior to that date the FmHA had determined that the Shicks had sold a number of their cows without the consent of the FmHA, and that, because of these sales, the herd had been reduced to 220 cows. The FmHA took the position that this action by the Shicks constituted a default on their part of the security agreement which gave it the right to accelerate the FmHA loans. The FmHA also contended that the Shicks were delinquent in their loan payments, but it developed that this was not true and that the Shicks were in fact current with their payments. After a hearing in June 1980, at which Hyman Shick was present, the District Director of the FmHA affirmed the initial decision to accelerate the notes and demanded immediate payment of the full amount due, this time citing "unauthorized disposal of security" as the reason.

By letter of July 15, 1980, the District Director advised the Shicks that they could appeal the acceleration decision to Thomas Shea, Area Coordinator, FmHA, South Agricultural Building, Washington, D.C. The Shicks did not appeal. The FmHA contends in the instant appeal that in failing to appeal the acceleration decision the Shicks failed to exhaust their administrative remedies and that this bars them from maintaining the present action.

On October 10, 1980, Hyman Shick filed a petition for reorganization under Chapter 11 of the Bankruptcy Act, 11 U.S.C. § 1101 et seq., which automatically stayed any attempt by John Hancock to foreclose its mortgage on the farm or by FmHA to foreclose its mortgage on Shicks personal property or to collect the accelerated notes. However, Shick never filed a plan of reorganization with the Bankruptcy Court and the court dismissed the petition.

On October 31, 1980, John Hancock filed a complaint with the Bankruptcy Court to modify the automatic stay and to permit foreclosure of its lien on the Shick farm. The Bankruptcy Court entered an order on February 11, 1981, permitting foreclosure. Thereafter, John Hancock foreclosed its mortgage and on or about May 12, 1981, the farm was sold at public auction to FmHA, the sole bidder, for $1,900,000.

On May 5, 1981, FmHA requested permission of the Bankruptcy Court to foreclose its mortgage on the personal property of the Shicks, which was granted. Thereafter, in May, after the foreclosure and sale of the farm by John Hancock, Shick acquiesced in FmHA's sale at public auction of his farm equipment and cattle on which FmHA held a mortgage. The property was sold for the sum of $103,000, which was applied to the Shick's debt to the FmHA.

Thereafter, the Shicks purchased 65 milk cows from a friend subject to a mortgage for the purchase price. They are now oper-

ating a modified dairy on the farm with this reduced herd.

On April 11, 1984, the Shicks were notified by the FmHA that unless prohibited by an order of the court it would take action to have the Shicks removed from the farm. In the meantime Indian artifacts were found on the farm, which required the government to obtain an Environmental Impact Statement before it could sell the farm. It was in the process of obtaining such a statement when this appeal was filed.

The district court issued a stay order effective during the period of this appeal upon the filing of a $6,000 bond by the Shicks. The Shicks filed the bond in cash. At the same time, the court refused to rule that the plaintiffs have a substantial likelihood of success on their appeal, although the appeal involves substantial legal questions.

There are two issues in this case which we must decide. They are:

1. Whether the court erred in granting defendants' motion to dismiss the case against FmHA on the ground that plaintiffs had failed to exhaust their administrative remedies.

2. Whether the court erred in granting defendants' motion to dismiss the case against the individual defendants.

Issue 1. is divided in two parts, by separate counts in the complaint. One is the alleged impropriety of claiming a default and accelerating the notes. The other is the failure to make known, and available to plaintiffs, the moratorium provisions of 7 U.S.C. § 1981a. These present different questions on the matter of exhaustion.

■ It is well settled that before judicial relief can be granted to a party he must have exhausted applicable administrative remedies. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); and *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770 (1st Cir.1981). The pleadings show without question that the plaintiffs did not exercise their right to appeal the adverse accelera-

tion decision of the District Director of the FmHA to the Area Coordinator in Washington, D.C. as provided in 7 C.F.R. § 1900, Subpart B, although they were advised in writing by the Director that they had the right to do so.

■ The plaintiffs contend that the requirement of exhaustion of administrative remedies should not apply to them in this case because they have presented constitutional questions. It is true that the exhaustion rule does not apply if constitutional issues are involved. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). However, an examination of plaintiffs' pleadings shows that they have not challenged the constitutionality of any part of the FmHA procedures. Furthermore, their constitutional allegations are no more than conclusory claims that their constitutional rights had been violated by the FmHA. Such general contentions do not rise to the level of constitutional issues. The District Court was correct in refusing to waive the administrative exhaustion requirement despite plaintiffs' constitutional argument.

■ The plaintiffs contend further that the exhaustion rule should not apply to them because further administrative appeal would have been futile. While there may be situations where such an exception would be applicable, such is not the case here. The plaintiffs have not pleaded any facts that support their conclusory statement that further administrative appeal would have been futile. There is no possible basis for this contention insofar as it relates to plaintiffs' claims relating to the alleged impropriety of asserting a default, and this portion of the action was properly dismissed.

A more serious contention of the plaintiffs is set forth in their allegations that the FmHA violated 7 U.S.C. § 1981a by failing to give notice to them of the availability of a moratorium on repayment of the FmHA loans at the time the payment of the loans was accelerated or at any

other time during the proceedings. 7 U.S.C. § 1981a provides as follows:

In addition to any other authority that the Secretary may have to defer principal and interest and forego foreclosure, the Secretary may permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under this chapter, or under the provisions of any other law administered by the Farmers Home Administration, and may forego foreclosure of any such loan, for such period as the Secretary deems necessary upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower.

The plaintiffs contended before the District Court, and contend here, that this statute required the FmHA to give the required notice at the time the notes were accelerated but it failed to do so, and that this failure excused them from exhausting their administrative remedies. The District Court ruled otherwise, saying that the statute was inapplicable to plaintiffs' case because they were not delinquent in their payments and the notes were accelerated because of plaintiffs' unauthorized disposal of security and not because of plaintiffs' default in making payments. Consequently, the court reasoned that plaintiffs were not eligible for a loan deferral under § 1981a, and, therefore, the notice did not have to be given by FmHA to them. For these reasons, the court held that the failure of FmHA to give the moratorium notice to the plaintiffs did not excuse them from exhausting their administrative remedies.

It should be pointed out that at the time the events occurred in this case the FmHA had not implemented 7 U.S.C. § 1981a by the issuance of regulations or otherwise, and was apparently following a practice and procedure that did not require it to give the moratorium notice to a borrower when it took adverse action on his loan. It is undisputed that the notice was not given to the Shicks in the instant case.

The interpretation of 7 U.S.C. § 1981a is a question of law. The plaintiffs argue that the District Court's interpretation of the statute is erroneous and that the required moratorium notice should have been given to them even though they were not delinquent in their payments.

The interpretation and meaning of Section 1981a has been passed on by a number of courts. Most of the decided cases hold that the FmHA is required to give a borrower notice that he may apply for a moratorium on the payment of his loan and that he be given an opportunity to demonstrate that he is eligible for it whenever the FmHA takes any adverse action on his debt. *See Matzke v. Block,* 732 F.2d 799 (10th Cir.1984) (aff'g. on this issue 564 F.Supp. 1157 (D.Kan.1983)); *Allison v. Block,* 723 F.2d 631 (8th Cir.1983) (aff'g 556 F.Supp. 400 (W.D.Mo.1982)); *United States v. Hamrick,* 713 F.2d 69 (4th Cir. 1983) (*per curiam*); *Gamradt v. Block,* 581 F.Supp. 122 (D.Minn.1983); *Coleman v. Block,* 580 F.Supp. 194 (D.N.D.1984) and 562 F.Supp. 1353 (D.N.D.1983); *Jacoby v. Schuman,* 568 F.Supp. 843 (E.D.Mo.1983); and *Curry v. Block,* 738 F.2d 1556 (11th Cir.1984).

The holdings of the courts in the above cited cases insofar as they relate to the question before us, may be briefly and generally stated as follows:

*Matzke v. Block, supra:* The Secretary must implement procedures under § 1981a. In order for a borrower to request a moratorium under the statute, there must be some kind of notice; *Allison v. Block, supra:* Congress intended for the Secretary to give notice of relief under § 1981a, and to establish procedures. Requirement of borrower request presupposes that notice is given; *U.S. v. Hamrick, supra:* Footnote 3—Regulations requiring notice should be applied retroactively, because borrower did not receive notice of relief under § 1981a in this case. The borrower did not receive the notice and he should

now be allowed to apply to the Secretary for relief under 7 U.S.C. § 1981a; *Gamradt v. Block, supra:* Notice is required to be given under § 1981a; *Coleman v. Block, supra:* FmHA enjoined from foreclosing until a 30-day notice given. The notice must tell the borrower of his right to a hearing to establish eligibility for loan deferral under § 1981a; *Jacoby v. Schuman, supra:* FmHA must issue regulations under § 1981a for notice, hearing, and deferral criteria; and *Curry v. Block, supra:* Borrowers should be advised of their rights to seek deferral relief during the loan making process and also when any delinquency notice is mailed and again when they are given any acceleration notice.

We approve and follow the decisions in the above cases. We do not choose to follow the holding of the Seventh Circuit Court in *U.S. v. Markgraf,* 736 F.2d 1179 (7th Cir.1984) which held that everyone is presumed to know the law and that FmHA borrowers are not entitled to written notice of the availability of deferral relief. We think this reasoning was adequately answered by the court in *Coleman v. Block,* 562 F.Supp. 1353 (D.N.D.1983) when it said:

> The lucky farmer whom the county agent told about the loan deferral could make a request but the other farmers not so lucky would be left in the dark. We cannot expect the ordinary farmer to spend his extra hours in a federal depository, probably at least one [sic] 100 miles away from his farm, reading the United States Code and the Federal Register. This court must assume that the Congress acted with a basic sense of fairness and would not want the opportunity to request a loan deferral to rest on such happenstance. 562 F.Supp. at 1361

■ Applying the majority rule as set forth by the court decisions cited above to the case before us, we conclude and hold that the FmHA District Director was required under the provisions of 7 U.S.C. § 1981a to give the Shicks notice of their right under the statute to apply to the Secretary for a moratorium on the payment of their loans at the time the loans were accelerated by FmHA. We hold further that the failure of the FmHA to give this notice to the Shicks excused them from exhausting their administrative remedies. Accordingly, the District Court erred in dismissing the case against FmHA, and that part of the judgment is reversed and the case against FmHA is remanded for further proceedings consistent with this opinion.

■ We believe it appropriate, however, to give the court some guidance, lest our silence be taken as agreeing that the complaint stated a cause of action in this regard. Count II, based upon 7 U.S.C. § 1981a, does not, in fact, state a cause of action, but we limit ourselves merely to saying why, since the government did not move to dismiss for that reason. A borrower seeking relief under section 1981a must show three things: (1) "circumstances beyond the borrower's control, (2) the borrower is temporarily unable to continue making payments ..., and (3) without unduly impairing (his) standard of living." In Count II's 62 paragraphs there is no allegation that, if delinquent,[2] and they had known of the statute, they could have met all of these conditions. Rather, they describe the statute as requiring a single condition: that the failure to pay was the result of circumstances beyond the borrower's control. This, they say, in conclusory terms was met. The rest of the pleading is silence.

The need of a temporary moratorium, in the context of the statute, is fundamental. The "circumstances" referred to are in the nature of a temporary emergency; adverse weather conditions, *Allison v. Block,* 556 F.Supp. 400, *supra:* a drought, and unusually low prices, *Matzke v. Block, supra.* But they must be temporary, and the effects recoverable. The statute's purpose is to permit "buying ... a little time to get back on their feet," *Curry v. Block,* 541

**2.** Plaintiffs further allege they were not delinquent, a matter now foreclosed.

F.Supp. 506, 518 (S.D.Ga.1982) (See discussion of legislative history at 518–520.) Although resolutions should be made favoring the farmer, id., this is a loan, not a grant, and there must be a "reasonable expectation that the account will ultimately be paid." *Coleman v. Block*, 580 F.Supp. *supra*, at 198. There is nothing in the pleading and in the record before us offering assurances that plaintiffs could have made such a showing in the spring and summer of 1980. Unless they could have, they were not hurt by not having been informed of the existence of the statute. Revision of the pleading, and factual proof, however, are not for us on this appeal; we merely note the present inadequacy.

■ As to the second issue before us relating to the dismissal of the case by the court against the individual defendants, it appears from the pleadings that some are sued in their official capacities, and some in their individual capacity. We are not clear why plaintiffs drew the distinction. Looking at the matter most favorably to plaintiffs, all defendants would have at least a qualified privilege, giving them immunity in the absence of malice, bad faith, etc. In any event, the plaintiffs have not alleged with sufficient specificity acts of any of the defendants in either their official or individual capacities that would support a claim or cause of action on which relief in the form of damages could be granted. The conclusory statements in plaintiffs' complaint are insufficient to withstand defendants' motion to dismiss. *Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *cf. Krohn v. United States*, 742 F.2d 24, 32 (1st Cir.1984).

We hold that the judgment of the District Court dismissing the case against the nine individual defendants was correct, and that part of the judgment is affirmed.

Plaintiffs' request for attorney fees and costs is denied.

*Affirmed in Part And Reversed And Remanded In Part.*