Travis Rickey CHILDRESS, Slaton
Jenkins Childress, Gary Dennis
Childress, Plaintiffs-Appellees,

v.

SMALL BUSINESS ADMINISTRATION,
et al., Defendants,

A.G. McClearen and Clyde Rice, Jr.,
Defendants-Appellants.

No. 86–7681.

United States Court of Appeals,
Eleventh Circuit.

Aug. 31, 1987.

Hubert J. Lewis, III, Asst. U.S. Atty., Frank W. Donaldson, U.S. Atty., Birmingham, Ala., for defendants-appellants.

Charles F. Norton, Jr., Falkenberry, Whatley & Heidt, Birmingham, Ala., for plaintiffs-appellees.

Before TJOFLAT and ANDERSON,
Circuit Judges, and HENDERSON,
Senior Circuit Judge.

PER CURIAM:

The district court determined that appellants McClearen and Rice were not entitled to qualified immunity from this suit brought by members of the Childress family. Because this conclusion was erroneous, we reverse.

## I. BACKGROUND

McClearen and Rice, defendants below, are local officials in the Farmers Home Administration ("FmHA") office in Marshall County, Alabama. The plaintiffs, members of the Childress family, were farmers in Marshall County who obtained various loans from the FmHA.

In 1979, 1980 and 1981, the Childresses applied for and received emergency farm loans from the FmHA. As of January 3, 1981, the Childresses had a total indebtedness of approximately $1.4 million. As a condition for these loans, the Childresses had agreed to a Farm and Home Plan which included a farm production plan, an estimate of future expenses and income, and a debt repayment schedule.

In July 1981, the Childresses applied for an additional emergency loan of $19,500. McClearen approved this application and signed a "request for obligation," thereby certifying that all prerequisites for such a loan had been met and that the funds would be advanced to the Childresses subject to the availability of funds and to other FmHA regulations.[1]

Sometime after signing this loan agreement, appellants McClearen and Rice came to believe that the Childresses had not complied with the requirements of their Farm and Home Plan and had not properly accounted for the proceeds which had derived from the recent sale of their potato crop. Though the check for the new loan had arrived from the United States Treasury (and thus the funds were available for payment to the Childresses), the loan was not completed. Instead, the Childresses were notified orally that before the loan could be closed they would have to properly account for the sale of their crop. The Childresses received, however, no written notification of the cancellation of the loan.

In response to this oral notification, the Childresses met with McClearen and sought to provide a proper statement regarding their potato sales. When McClearen reviewed this statement, he nonetheless determined that the Childresses had deviated from the approved Farm and Home Plan by using the loan proceeds for unauthorized purposes. McClearen thus concluded that the additional $19,500 loan to the Childresses should be cancelled, and he orally informed them of his decision. The Childresses were not provided written notice of the cancellation, nor were they informed of their right to appeal the decision in accordance with 7 C.F.R. § 1900.53 (1981).

The Childresses subsequently defaulted on their previous loans and other creditors have foreclosed their interests in the Childresses' real estate and farm equipment.

■ The Childresses originally brought this suit raising various claims against a

---

1. The relevant part of the agreement signed to by McClearen reads in full:

I HEREBY CERTIFY that all of the committee and administrative determinations and certifications required by Farmers Home Administration regulations prerequisite to providing assistance of the type indicated above have been made and that evidence thereof is in the docket, and that all requirements of pertinent regulations have been complied with. I hereby approve the above-described assistance in the amount set forth above, and by this document, subject to the availability of funds, the government agrees to advance such amount to the applicant for the purposes of and subject to conditions prescribed by Farmers Home Administration regulations applicable to this type of assistance.

Record on Appeal, vol. 1, Tab 31, Exh. H.

number of defendants. The only issue now before us is the district court's determination that McClearen and Rice are not entitled to qualified immunity for the actions they have taken with respect to the Childresses' loan.[2] This conclusion by the district court rests upon two independent considerations. First, the district court concluded that by signing the request for obligation McClearen had created a property interest which the Childresses could not be deprived of without due process of law. Second, the district court concluded that the denial of this property right occurred without due process because it violated a clearly-established constitutional norm embodied in the FmHA regulations. This appeal then ensued.

## II. DISCUSSION

For purposes of appeal, we assume, *arguendo*, without deciding, that the Childresses did indeed have a property right in not being denied their loan without due process of law. We nonetheless conclude that appellants were entitled to qualified immunity for their actions because they did not act to deny the Childresses this property interest in violation of a clearly-established constitutional norm.

The only basis for the Childresses' cause of action is a *Bivens*-type action based upon their constitutional right to due process. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens*, the Supreme Court concluded that federal agents acting under color of their authority are liable in damages when they act outside that authority. Thus, government officials are subject to monetary liability for actions which violate the constitutional rights of a citizen. Recognizing, however, that such liability would chill the exercise of discretionary governmental authority, the Supreme

Court has since crafted a qualified immunity doctrine which shields certain discretionary actions of government officials from suit. The Court has concluded that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (emphasis added); *see also Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2811, 86 L.Ed.2d 411 (1985). This qualified immunity is not just a denial of liability, but rather it is also an entitlement not to stand trial under certain circumstances. *Mitchell*, 472 U.S. at 525, 105 S.Ct. at 2815–16. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* at 2816. As the Supreme Court had recently reaffirmed,

> [T]he right the official is alleged to have violated must have been 'clearly established' in a ... particularized, and hence ... relevant sense: The contours of the rights must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Anderson v. Creighton*, —— U.S. ——, ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citations omitted). Thus, the relevant question is the objective one of whether the officials could have believed their actions to be lawful in light of clearly-established law and the information they possessed. *Id.*

**2.** The denial of qualified immunity, while interlocutory in nature, is nonetheless immediately appealable. *See Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2815–17, 86 L.Ed.2d 411

(1985). The other determinations made by the district court are subject to review by our court, if at all, only after a final judgment has been entered in this case.

We think it evident that appellants violated no clearly-established constitutional right. In reaching the opposite conclusion, the district court relied principally upon the fact that appellants violated the then-existing procedural requirements of the FmHA regulations. In particular, 7 C.F.R. § 1945.83(f)(2) (1981) (current version codified as revised at 7 C.F.R. § 1945.-113(b) (1987)) provided that when an applicant was denied a loan he would be notified in writing regarding the reasons for his rejection and that he·would be provided with written notice of his right to appeal. Section 1900.53 (1981) (current version codified as revised at 7 C.F.R. § 1910.6(b) (1987)) contained a similar requirement that written notice be given which provided a description of the action taken by the official, an invitation to an informal hearing with the officer, and notification of the right to appeal the decision.

However, the United States Supreme Court has expressly rejected the district court's reasoning. In *Davis v. Scherer*, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984), the Court held that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." Indeed, the Court noted that "[n]either federal nor state officials lose their immunity by violating the clear command of a statute or regulation—of federal or of state law—unless that statute or regulation provides the basis for the cause of action sued upon." *Id.* at 194 n. 12.[3] Thus, the mere existence of certain regulations does not make the constitutional unlawfulness of an official's actions apparent; the constitutional right allegedly violated must itself have been clearly established. Consequently, it is clear that qualified immunity may not be denied simply because appellants violated the clear command of FmHA regulations.

*Culbreath v. Block*, 799 F.2d 1248, 1250 (8th Cir.1986) ("officials do not forfeit qualified immunity solely by failing to comply with the provisions" of FmHA regulations).

Though appellants' breach of the regulations does not demonstrate that they violated clearly-established constitutional rights, they might nonetheless be held liable if their actions had violated the minimum constitutional requirements of due process as clearly established at the time of their actions. No such violation, however, can be found in the facts of this case.

When appellants decided that they would not give ultimate approval for the $19,500 loan they orally notified the Childresses and gave them an opportunity to come in and discuss the matter informally. Both parties concede that there was actually a conference at which the Childresses attempted to satisfy the concerns of the federal supervisors. It was only after this meeting that appellants finally concluded that the Childresses had improperly used the proceeds of their previous loan. Under the regulations, the Childresses had a right to appeal this decision and the federal parties did not advise them of this right, either orally or in writing.

We know of no case, however, which holds that minimum due process requires that the parties not only be given a notice and hearing but also that they be specifically advised of their right to appeal. In any event, we need not hold that minimum due process does not include such a right to notice but only recognize, as we must, that such a right has not been clearly established as a constitutional minimum. *Culbreath*, 799 F.2d at 1250 (concluding that right to notice of right to appeal not clearly established). Because appellants' actions did not violate clearly-established procedural due process constitutional norms, they retain their qualified immunity

---

**3.** It is conceded by all that no private right of action against federal officials exists based upon the statutes authorizing FmHA loans. *See Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Thus, the only basis for this claim is a *Bivens* action based on the constitutional right to due process. The statutes and regulations upon which the Childresses rely do not provide the basis for the cause of action upon which they sue.

and the district court order to the contrary was erroneous.[4]

For the foregoing reasons, the decision of the district court is reversed.

REVERSED AND REMANDED.

---

**4.** The Childresses also argue that appellants' actions violated substantive due process and the Equal Protection Clause of the Constitution. These claims are based primarily upon allegations of arbitrary and capricious prosecution and upon an investigation by the United States Attorney which allegedly revealed that over two-thirds of the farmers in Marshall County had similarly violated their Farm and Home Plans without having their loans rescinded. *See* Record on Appeal, vol. 1, Tab 38, Exh. C. However, the evidence relied upon by the Childresses gives rise to no inference of invidious and arbitrary treatment. The investigation by the United States Attorney merely reveals that over two-thirds of the farmers in Marshall County have sold mortgaged property without the permission of the FmHA. The letter does not conclude, and indeed it seems unlikely, that these farmers then put the proceeds from these sales to an unauthorized use. In the instant case, however, the appellants established that the Childresses had, in fact, applied the proceeds of the sale of their crop for an unauthorized purpose. This determination, by itself, provides ample justification for the actions taken by appellants. The evidence presented can give rise to no claim that appellants have engaged in the type of egregious conduct which would be deemed a denial of substantive due process or equal protection. *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1500 (11th Cir.1985) (en banc), *cert. denied,* —— U.S. ——, 106 S.Ct. 1993, 90 L.Ed.2d 654 (1986).