Patrick F. McBRIDE and Sonya S. McBride, Plaintiffs, Appellees,

v.

Steven H. TAYLOR and Dwight A. Sewall, Defendants, Appellants.

No. 90–1528.

United States Court of Appeals, First Circuit.

Heard Oct. 2, 1990.

Decided Jan. 30, 1991.

John F. Daly, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Richard S. Cohen, U.S. Atty., Augusta, Me., and Barbara L. Herwig, Atty., Dept. of Justice, Washington, D.C., were on brief, for defendants, appellants.

Anthony P. Shusta, II with whom Corson & Shusta, P.A., Madison, Me., was on brief, for plaintiffs, appellees.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and ATKINS,* Senior District Judge.

ATKINS, Senior District Judge.

This is an interlocutory appeal from the district court's denial of the defendants' motion for summary judgment based on qualified immunity. The defendants, officials with the Farmers Home Administration (hereinafter "FmHA"), sued in their individual capacities, are alleged to have deprived the McBrides, poultry farmers, of an established property interest in violation of the Fifth Amendment to the United States Constitution. Despite our determination that this appeal was timely filed,[1] we reverse. While we do not condone the defendants' deceitful conduct, we none-theless hold that the defendants are entitled to qualified immunity for their actions because they did not act to deny the McBrides of any property interest in violation of clearly-established constitutional norms.

## I. BACKGROUND

### A. Facts Leading to the Foreclosure Sale

The McBrides purchased a 57–acre farm in Norridgewock, Maine, in March of 1971. Sometime later, the McBrides decided to arrange financing to equip the farm with the necessary improvements for poultry ("broiler") farming. In 1975, the McBrides received a $94,000 farm-ownership loan from the FmHA to finance such meliorations. The McBrides also obtained a $40,000 real estate loan from Skowhegan Savings Bank (hereinafter the "Bank"). The Bank's $40,000 mortgage on the farm was senior to the FmHA's loan. In September of 1975, the McBrides received an additional $29,300 operating loan from the FmHA for farm equipment and machinery. Sometime between 1981 and 1982, the McBrides' loan payments were in arrears.[2] The FmHA took no actions through 1981 to early 1982, with respect to the McBrides' delinquency in their loan payments.

In the Fall of 1982, the McBrides met with defendant Taylor, the Somerset County supervisor for the FmHA, to discuss the McBrides' options in regard to their overdue mortgage payments. At the meeting, Taylor allegedly suggested that the McBrides request the Bank, the first lienholder, to foreclose on the McBrides' bank loan. This action, as represented by Taylor, would facilitate the FmHA's control over the entire indebtedness, by allowing

---

\* Of the Southern District of Florida, sitting by designation.

1. Seeing no reason why the defendants, federal officials sued in their individual capacities, should not be allowed the 60–day appeal time, and following the express language of Rule 4(a)(1) of the Federal Rules of Appellate Procedure, we find that the defendants' appeal was timely filed.

2. In 1981, the broiler processing industry in Maine suffered a virtual collapse, by the closing of four to five poultry processing companies, including the one with which the McBrides had a contract. Since the poultry farming business is dependent on the poultry processors to supply chicks and feed to the poultry farmers, as well as pay the farmers for the grown chickens, the poultry farmers also suffered economically. As a result, the McBrides and many other Maine poultry farmers became seriously delinquent in their loan payments to the FmHA.

the FmHA to purchase the Bank's mortgage; under this arrangement, the McBrides could keep their farm. Taylor denies these allegations.

The McBrides allege that they agreed to Taylor's plan and followed through by contacting the Bank to request that the Bank initiate foreclosure action. In October of 1982, the Bank began foreclosure proceedings against the McBrides. The Somerset County Superior Court entered a Judgment of Foreclosure and Sale of the Farm on January 14, 1983. This judgment triggered the running of a one year period of redemption under Maine law.[3]

After the Bank initiated the foreclosure action, defendant Sewall, the FmHA State Director, submitted an affidavit and lien notice reflecting FmHA's secured interest in the McBrides' property. Between January of 1983 and January of 1984, the defendants, as FmHA officials, are not alleged to have taken any actions with respect to the McBrides or the impending foreclosure. In early February 1984, after the redemption period expired, Sewall, Taylor's FmHA supervisor, instructed Taylor to appear at the foreclosure sale, scheduled for March 1, 1984, and to bid on the McBrides' property.

The McBrides allege that on February 16, 1984, Taylor demanded that the McBrides "voluntarily" convey their farm to the FmHA. Taylor allegedly told the McBrides that if they did not voluntarily convey the farm, the FmHA would sell the property and the McBrides would still be liable for the FmHA debt. It is further alleged that Taylor stated that voluntary conveyance or foreclosure were the McBrides' only alternatives. On February 20, 1984, the McBrides then spoke with

Sewall on the telephone, anent the voluntary conveyance. Sewall allegedly stated that voluntary conveyance was the McBrides' only alternative to foreclosure. On February 21, 1984, the McBrides met with Taylor and signed the papers for their voluntary conveyance of their farm. Included in the voluntary conveyance was a bill of sale for the fixtures on the farm.[4]

Sometime between the end of February and the March 1, 1984 foreclosure sale, Taylor informed the McBrides that their voluntary conveyance to the FmHA would not be accepted.[5] Because the voluntary conveyance was not accepted, Taylor attended the foreclosure sale and the FmHA was the successful bidder, and accordingly obtained title to the entire property. The FmHA sold the farm on September 16, 1984, to a third party.

## B. The *Coleman* Injunction

On November 14, 1983, a nationwide temporary injunction was entered by the United States District Court for the District of North Dakota. *Coleman v. Block*, 580 F.Supp. 192 (D.N.D.1983). This temporary injunction concerned various practices by the FmHA in regard to default, appeal and foreclosure procedures. The temporary injunction was made permanent after a trial on the merits. *Coleman v. Block*, 580 F.Supp. 194 (D.N.D.1984). The permanent injunction enjoined the FmHA and their agents from accelerating the indebtedness of borrowers' loans, foreclosing on the borrowers' real property or chattels, demanding voluntary conveyance of the borrowers and repossessing chattels of the borrowers or in any way proceeding against or depriving borrowers of property in which the FmHA has a security interest, unless the

---

**3.** See 14 M.R.S.A. § 6322.

**4.** Appellees present an interesting argument on the priority of the FmHA's purchase money security interest in the farm equipment and the bill of sale executed at the time the McBrides signed the voluntary conveyance papers. However, since this legal theory was not presented to the district court, we decline to raise the issue for the first time on appeal. *See Sanchez–Arroyo v. Eastern Airlines, Inc.,* 835 F.2d 407 (1st Cir.1987).

**5.** The FmHA had concerns over whether they could obtain clear title because the judicial sale had already been advertised and the Bank had determined to go through with the sale to avoid any possibility of third-party claims based on reliance on the advertisement. Upon rejection of the voluntary conveyance, the FmHA treated all documents signed to carry out the conveyance as a nullity; this included the bill of sale for the fixtures on the farm.

FmHA provided at least 30 days' written notice of the action with reasons for the action, a right to an appeal, and an opportunity to establish eligibility for loan deferral under 7 U.S.C. § 1981a. *Id.* at 210–211. The rulings in the *Coleman* injunction were ultimately rendered moot by supervening legislation. *Coleman v. Lyng,* 864 F.2d 604 (8th Cir.), *cert. denied,* —— U.S. —— 110 S.Ct. 364, 107 L.Ed.2d 351 (1989). Congress enacted the Agricultural Act of 1987, P.L. No. 100–233, 101 Stat. 1568, a statute which provides more relief to FmHA borrowers than the district court's order in the *Coleman* case. *Id.* at 605.

## C. Procedural Background

The McBrides subsequently brought this Bivens-type action in February of 1986 based on their constitutional right to due process. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Taylor and Sewall, officials of the FmHA, were sued individually for damages associated with the claimed deprivation of the McBrides' property. This Fifth Amendment violation assertedly arose as the result of the defendants' failure to provide the plaintiffs with proper notice and an opportunity for a hearing, before foreclosure of the first mortgage on the McBrides' chicken farm. The defendants' unlawful actions are also alleged to have been in violation of the *Coleman* injunction.

The defendants, Taylor and Sewall filed a Motion to Dismiss or, for Summary Judgment or, a Motion to Stay Proceedings, on August 6, 1986. The McBrides likewise filed a Motion to Stay proceedings in this case pending the conclusion of their contempt action brought against Taylor and Sewall in the *Coleman* class action litigation and related *Coleman* injunction which established procedures in regard to foreclosure. On January 4, 1989, the North Dakota district court entered an order on the McBrides' motion in Civil No. A1–83–47–09 finding the defendants' actions in contempt of the *Coleman* injunction.[6]

Following the stay of proceedings in this case, the district court ordered further briefing on the pending motion to dismiss or in the alternative for summary judgment. On February 21, 1990, the magistrate to whom the case had been referred, entered an order recommending denial of the motion, treating it as one for summary judgment. On April 6, 1990, the District Court entered an order adopting the magistrate's recommended ruling. Defendants filed their timely notice of appeal on May 31, 1990 pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure. Defendants brought this interlocutory appeal from the denial of immunity pursuant to *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).

## II. DISCUSSION

### A. General Principles of Qualified Immunity

■ Public officials performing discretionary functions enjoy qualified immunity from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted). On a motion for summary judgment based on a defense of qualified immunity, the relevant question is whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct. *See Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). The Supreme Court in *Creighton* observed that:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by

---

**6.** The court held that the defendants in their official capacities and, under the theory of respondent superior of the United States Secretary of Agriculture, had violated the *Coleman* injunctions. The North Dakota court awarded damages to the McBrides.

qualified immunity unless the very action in question has previously been held unlawful (citations omitted); but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640, 107 S.Ct. at 3039 (citations omitted). "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019–20, 82 L.Ed.2d 139 (1984). When applying these principles, we must consider the entire record before us. *See Unwin v. Campbell,* 863 F.2d 124 (1st Cir. 1988).

**B. The *Coleman* Injunction Was Not Clearly Established Law**

■■■ We think it is apparent that the defendants violated no clearly-established constitutional right. The district court reached the opposite result concluding that the *Coleman* injunction was clearly established law when the March 1, 1984 foreclosure sale transpired. The district court viewed the temporary injunction entered in the *Coleman* litigation in late 1983 as clearly established law. This Court will not go so far as to hold that a district court's entering of a temporary injunction creates clearly established constitutional rights barring an official's entitlement to qualified immunity.

Our conclusion today is not unsupported. The Eleventh Circuit held that the failure to follow FmHA regulations does not make the constitutional unlawfulness of an official's actions apparent; the constitutional right allegedly violated must itself have been clearly established. *Childress v. Small Business Administration,* 825 F.2d 1550 (11th Cir.1987). In *Childress,* the court found that it was not clearly established that the plaintiffs had a constitutionally protected right to be notified of an appeal. *Id.* at 1553. Similarly, the right to notice of an alternative proceeding to an FmHA liquidation has not been held to amount to clearly established law. *Culbreath v. Block,* 799 F.2d 1248, 1250 (8th Cir.1986).

This circuit recently upheld qualified immunity for FmHA officials. In *Martin v. Marriner,* 904 F.2d 120 (1st Cir.1990), loan applicants brought an action against officials of the FmHA alleging that failure to follow statutorily required procedures in processing loan application was tortious behavior. The court in *Marriner* found the FmHA officials were protected under the doctrine of qualified immunity and held that:

> At the time of the allegedly unconstitutional conduct, the preexisting law did not indicate that the rights asserted were "clearly established," nor would a reasonable official have known that, merely by violating some administrative regulation, he or she would be acting unconstitutionally and infracting loan applicants' constitutional rights.

*Marriner,* 904 F.2d at 122.

The procedural issues addressed in the *Coleman* were highly controversial before and after the issuance of the *Coleman* 1983 injunction. The FmHA borrowers in *Coleman* claimed broad rights of "notice" before the FmHA could take various actions such as acceleration or foreclosure. *See Shick v. FmHA,* 748 F.2d 35, 40–41 (1st Cir.1984). The procedural rights claimed in *Coleman* were in regard to the right to individualized notice of obtaining relief under the loan deferral program of 7 U.S.C. § 1981a. During the relevant time period, at least two circuits declined to find any duty, statutory or constitutional, to provide such notice to FmHA borrowers. *See Ramey v. Block,* 738 F.2d 756, 762 (6th Cir.1984); *United States v. Markgraf,* 736 F.2d 1179, 1185–86 (7th Cir.1984), *cert. dismissed,* 469 U.S. 1199, 105 S.Ct. 1154, 84 L.Ed.2d 308 (1985).

In fact, this Circuit did not rule on these issues until November of 1984, after all the events at issue in this case had taken place. *See Shick v. FmHA,* 748 F.2d at 40. It was not until 1988 that Congress enacted legislation which codified the various procedural protections for FmHA borrowers. Agricultural Credit Act of 1987, P.L. No. 100–233, 101 Stat. 1568. The district court's rulings in the *Coleman* litigation

were ultimately rendered moot by this supervening legislation. *See Coleman v. Lyng*, 864 F.2d 604 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989).

During 1982 through 1984, we agree that the defendants should have informed the McBrides of their rights under the *Coleman* injunction. However, this failure to inform, under the circumstances in this case, does not amount to a violation of a clearly established constitutional right. Therefore, even if the defendants violated the *Coleman* injunction, conduct which we do not condone, their actions would not amount to a violation of a clearly established constitutional due process right. In short, such due process requirements were not clearly established in 1982, 1983 or 1984 and defendants are immune from suit on such theories.[7]

In addition, it follows that these FmHA officials could not have reasonably believed that their actions were unlawful, given preexisting law and the information they possessed. *See Marriner*, 904 F.2d at 121. Even though the temporary injunction became permanent in late February of 1984, the FmHA officials could not have reasonably known that the procedures set forth in the *Coleman* injunction were clearly established constitutional rights.

### III. CONCLUSION

We reverse and remand to the district court to enter summary judgment in favor of the individual defendants, as they are entitled to qualified immunity under these circumstances.

*Reversed and Remanded.*

---

**7.** Since we find no clearly established constitutional right to due process during the relevant time periods, we need not reach the issues associated with whether the McBrides had a property interest in their farm and farm equipment or whether the farm equipment should be treated as a "fixture" under state law.