USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1113 RUSSELL COTNOIR, Plaintiff - Appellee, v. UNIVERSITY OF MAINE SYSTEMS AND GEORGE CONNICK, ET AL., Defendants - Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _____________________ Paul W. Chaiken, with whom Brett D. Baber and Rudman & _________________ ________________ ________ Winchell were on brief for appellants. ________ Joseph M. Jabar, with whom John P. Jabar and Daviau, Jabar & _______________ _____________ _______________ Batten were on brief for appellee. ______ ____________________ September 13, 1994 ____________________ TORRUELLA, Circuit Judge. Plaintiff-appellee Russell _____________ Cotnoir, a tenured professor at the University of Maine, Augusta ("UMA"), was accused of academic and administrative improprieties and was subsequently fired. Cotnoir then filed suit against the UMA and three university employees, Chancellor Robert Woodbury, President George Connick, and Provost Richard Randall ("the individual defendants"), pursuant to 42 U.S.C. 1983, alleging, among other things, that the individual defendants denied Cotnoir procedural due process in connection with their decision to terminate his employment. The individual defendants moved for summary judgment, requesting that they be granted qualified immunity. The district court denied their motion and this interlocutory appeal followed. We find that at this juncture, the individual defendants are not entitled to qualified immunity with respect to Cotnoir's procedural due process claim, and therefore, we affirm. I. STATEMENT OF THE CASE I. STATEMENT OF THE CASE _____________________ A. Facts A. Facts When a defendant moves for summary judgment based on the doctrine of qualified immunity, the court must review the facts in the light most favorable to the plaintiff. Febus- ______ Rodr guez v. Betancourt-Lebr n, 14 F.3d 87, 89 (1st Cir. 1994). _________ _________________ The facts appearing from the summary judgment materials are as follows. Cotnoir was a tenured professor at the UMA, and was also the Chairperson of the Business and Governmental Science - 2 - Division ("BAGS"). On October 29, 1991, another professor at the UMA, Ronald Norton, sent a letter to the dean of students indicating that a BAGS student had received 56 credits without having attended classes. Norton's letter further indicated that this particular student was registered as a Maine resident, although he was living in Louisiana. In response to the letter, Richard Randall, the Provost at the UMA, conducted an investigation. As part of this investigation, Randall interviewed Cotnoir, several of his colleagues, and other individuals with knowledge regarding the incident. On December 13, 1991, Randall completed his report, and gave it to George Connick, the President of the UMA. This report contained a summary of Randall's findings regarding this academic matter and included an explicit recommendation that Cotnoir be dismissed. On December 16, 1991, Connick sent a letter to Cotnoir, which stated: Provost Richard Randall has completed his report to me on the investigation of the academic issues raised by Professor Ronald Norton in his letter of October 29, 1991. I wish to offer you the opportunity to meet with me so that you might further clarify your role in this series of events, prior to my determining what action to take. It is important that you understand that disciplinary action may result from my investigation of your participation in this serious academic matter. If you would like to meet with me, please call Lisa Grundstrom-Whitney, Assistant - 3 - to the President, immediately, so that an appointment can be arranged before the endof theday, Wednesday,December 18,1991. On December 17, 1991, Connick met with Cotnoir. During this meeting, Connick explained to Cotnoir that Randall had prepared a report of the investigation. Connick did not show Cotnoir the report, and Cotnoir apparently did not ask to see the report. Cotnoir did not make a statement, and Connick then proceeded to ask Cotnoir twelve questions about the BAGS student, which Cotnoir answered. On December 27, 1991, Connick sent Cotnoir a letter informing him that his employment was terminated effective December 31, 1991. Cotnoir then filed a grievance regarding the termination. Connick appointed Sherri Stevens, Executive Director of Administrative Services, to be his designee, and impartially review the matter. Although Stevens never held a hearing, she met with Cotnoir and his faculty representative three times. On June 5, 1992, Stevens submitted a report to Connick concluding that the UMA had met its burden of proof that there was sufficient cause to terminate Cotnoir, and that the termination decision should not be reversed. Connick accepted her report. At this time, Stevens was also representing the UMA in opposing Cotnoir's request for unemployment benefits before Maine's Department of Labor, on the basis of Cotnoir's alleged misconduct. On June 17, 1992, Cotnoir filed a grievance with Chancellor Woodbury. Woodbury appointed Samuel D'Amico, the - 4 - Associate Vice Chancellor, to review Cotnoir's grievance. On July 13, 1992, D'Amico notified Cotnoir that his review was limited to a determination of whether proper procedures had been followed. D'Amico ultimately concluded that Cotnoir's termination was conducted in accordance with the grievance procedures set forth in the UMA's handbook for non-represented employees. D'Amico notified Cotnoir that he had a right to appeal to the University of Maine System Board of Trustees. Cotnoir then waived his right to appeal to the Board of Trustees, and the UMA agreed to this waiver. B. Proceedings Below B. Proceedings Below Following his termination, Cotnoir filed this action, alleging claims under 42 U.S.C. 1983, as well as pendent state claims. The claim which underlies this appeal is that Woodbury, Connick, and Randall, violated Cotnoir's right to procedural due process in conjunction with their decision to terminate his employment. The individual defendants moved for summary judgment. In this motion, they claimed, in part, that they were entitled to qualified immunity with respect to Cotnoir's procedural due process claim. Magistrate Judge Beaulieu issued a recommended decision denying the individual defendants' summary judgment motion on the issue of qualified immunity. The district court (Brody, J.), then adopted the Magistrate Judge's recommended decision. This interlocutory appeal followed. II. ANALYSIS II. ANALYSIS ________ A. Jurisdiction A. Jurisdiction - 5 - At the outset, we will discuss the scope of this appeal. "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. 1291. . . ." Febus-Rodr guez, 14 F.3d at 90 (quoting Fonte v. _______________ _____ Collins, 898 F.2d 284, 285 (1st Cir. 1990)) (other citations _______ omitted). On appeal, Cotnoir suggests that in addition to affirming the district court's denial of qualified immunity below, we should also decree that he is entitled to judgment as a matter of law on his 1983 procedural due process claim. Cotnoir contends that he is entitled to such a judgment because the record is clear regarding the events which occurred with respect to his termination. We decline Cotnoir's invitation, and adhere to our "well-established practice of limiting our interlocutory review to the issue of qualified immunity," even when the merits of the case are "inexorably intertwined" with the qualified immunity issue. Newman v. Massachusetts, 884 F.2d 19, ______ _____________ 22 (1st Cir. 1989), cert. denied, 493 U.S. 1078 (1990) (citations ____________ omitted). B. The Summary Judgment Standard B. The Summary Judgment Standard "Where a qualified immunity defense is advanced by pretrial motion, 'normal summary judgment standards' control." Amsden v. Moran, 904 F.2d 748, 752 (1st Cir. 1990), cert. denied, ______ _____ ____________ 498 U.S. 1041 (1991) (citations omitted). A motion for summary judgment must be granted if: [T]he pleadings, depositions, answers to interrogatories, and admissions on file, - 6 - together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). In this context, we will examine the record and "draw all reasonable inferences therefrom in the light most hospitable to the party opposing the motion." Amsden, 904 ______ F.2d at 752 (citing Anderson v. Liberty Lobby, 477 U.S. 242, 255 ________ _____________ (1986)) (other citation omitted). Because the individual defendants' summary judgment motion rested on the legal question of whether they are entitled to qualified immunity on the basis of facts which must, by definition, be undisputed, appellate review of the district court's order is plenary. See Amsden, 904 ___ ______ F.2d at 752. We will therefore delve into the record to determine whether a genuine issue of material fact exists with respect to the individual defendants' claim that they are entitled to qualified immunity. Unwin v. Campbell, 863 F.2d 124, _____ ________ 132 (1st Cir. 1988).1 C. Qualified Immunity C. Qualified Immunity Qualified immunity shields government officials performing discretionary functions from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have ____________________ 1 The three individual defendants did not attempt to identify who was responsible for each action; rather, they focused on their collective liability. At this juncture, we will not attempt to distinguish among the individual defendants in order to determine to what extent each may or may not have contributed to the alleged harm. See Domegan v. Fair, 859 F.2d 1059, 1065 ___ _______ ____ (1st Cir. 1988). - 7 - known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Hoffman ______ __________ _______ v. Reali, 973 F.2d 980, 985 (1st Cir. 1992); Amsden, 904 F.2d at _____ ______ 751. On a motion for summary judgment, "the relevant question is whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." Febus-Rodr guez, 14 F.3d at 91 (quoting McBride v. Taylor, 924 _______________ _______ ______ F.2d 386, 389 (1st Cir. 1991)) (other citations omitted). Thus, the central issue with respect to qualified immunity is not whether a defendant actually violated a plaintiff's rights. Rather, the inquiry focuses on the objective reasonableness of a defendant's actions, in light of whether the plaintiff's rights were clearly established, and whether the contours of that right were sufficiently clear such that a reasonable official would have understood that the actions he took violated that right. See Amsden, 904 F.2d at 752-53; Collins v. Marina-Mart nez, 894 ___ ______ _______ _______________ F.2d 474, 476 (1st Cir. 1990). D. Procedural Due Process D. Procedural Due Process The Fourteenth Amendment to the United States Constitution provides that no state shall deprive any person of life, liberty or property without due process of law. See ___ generally Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972); _________ ________________ ____ Amsden, 904 F.2d at 752. Cotnoir was a tenured professor at the ______ UMA. It has long been "clearly established" that a tenured professor enjoys a property right sufficient to invoke procedural due process protections. See Perry v. Sindermann, 408 U.S. 593, ___ _____ __________ - 8 - 601 (1972); Collins, 894 F.2d at 478; Newman, 884 F.2d at 19 _______ ______ (citations omitted). We must therefore determine what process was due Cotnoir, and whether the individual defendants reasonably should have understood that their actions violated Cotnoir's procedural due process rights. See Amsden, 904 F.2d at 752; Newman, 884 ___ ______ ______ F.2d at 23. Procedural due process is a "guarantee of fair procedure." Amsden, 904 F.2d at 753 (quoting Zinermon v. Burch, ______ ________ _____ 494 U.S. 113, 125 (1990)). The basic purport of the constitutional requirement is that, before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard "at a meaningful time and in a meaningful manner." Amsden, 904 F.2d at 753 (quoting Armstrong v. Manzo, 380 U.S. ______ _________ _____ 545, 552 (1965)). Procedural due process guarantees an affected individual the right to some form of hearing, with notice and an opportunity to be heard, before he is divested of his protected interest. See Cleveland Board of Education v. Loudermill, 470 ___ _____________________________ __________ U.S. 532, 542 (1985); Collins, 894 F.2d at 480; Newman, 884 F.2d _______ ______ at 23l; Brasslett v. Cota, 761 F.2d 827, 836 (1st Cir. 1985). _________ ____ While a hearing need not be elaborate, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S. at 546 __________ (citations omitted); Brasslett, 761 F.2d at 836. _________ E. The Process Afforded Cotnoir E. The Process Afforded Cotnoir - 9 - The dictates of Loudermill squarely control the present __________ case, and compel us to find that based on the facts appearing in the record, the individual defendants reasonably could not have believed that their actions satisfied the minimum procedural due process requirements.2 Cotnoir argues that the individual defendants are attempting to recast their investigation of the charges of academic and administrative impropriety which were alleged against him, into a hearing with respect to these charges, and their decision to fire him. Cotnoir argues that, in fact, he was never afforded a hearing where he had a fair opportunity to present his side of the story. Based on the facts now appearing in the record, we agree and find that the individual defendants' after-the-fact recharacterization of their actions fails. At this juncture, the individual defendants are not entitled to judgment, because it appears from the record that they denied Cotnoir: 1) adequate notice of the UMA's proposed decision to terminate his employment based on alleged academic and administrative improprieties, and 2) an explanation of the UMA's evidence against him. 1. Failure to Provide Notice of Proposed Action 1. Failure to Provide Notice of Proposed Action The individual defendants contend that they were only obligated to provide Cotnoir with notice regarding the charges of academic and administrative improprieties alleged against him, ____________________ 2 Our references to the record facts are not intended to determine any factual issue, but merely reflect the facts that are either undisputed or cannot be resolved against Cotnoir __ except by the fact finder in the trial court. - 10 - and that they had no further obligation to notify Cotnoir that they were considering terminating his employment. They claim that because the record shows that they notified Cotnoir of the charges against him, they did not violate Cotnoir's procedural due process rights, and they are entitled to qualified immunity. We disagree. When the Supreme Court decided Loudermill, it __________ clearly contemplated that when an individual is faced with the potential loss of a protected interest, officials must provide the individual with notice of the charges alleged against him and ___ any proposed action the officials intend to take, based on those charges. See Loudermill, 470 U.S. 543-46. ___ __________ [The pretermination hearing] should be an initial check against mistaken decisions - essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed ___ action. . . . The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. Id. at 545-46 (emphasis added) (internal citations omitted). __ Providing notice of both the charges against an employee, and the proposed action based on those charges is necessary, because "[e]ven where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." Id. at 543 (citations omitted). __ - 11 - Based on the facts now appearing in the record, it appears that the individual defendants failed to provide Cotnoir with any notice that they were considering terminating his employment, prior to making the decision to do so. The record indicates that Cotnoir initially met with Randall with respect to Randall's investigation into the academic incident, and Cotnoir generally explained what actions he had taken relative to this incident, and why he had taken those actions. After completing his investigation, Randall prepared a report, and submitted it to Connick. In that report, Randall set forth his findings based on his investigation, and recommended that Cotnoir be fired. Connick then invited Cotnoir to meet with him so that Cotnoir could "clarify [his] role in this series of events," and Connick alerted Cotnoir that unspecified "disciplinary action" could _____ result. Cotnoir met with Connick, at which time Connick asked Cotnoir to explain his role, and Connick asked him a series of questions. Connick did not show Cotnoir the report, or otherwise alert Cotnoir to the fact that he was considering terminating his employment. Thus, despite the fact that Connick knew that Randall had recommended termination, and that this action was clearly being contemplated, the individual defendants never provided Cotnoir with any notice of this proposed action. The decision of whether or not to terminate Cotnoir's employment was the very decision which would deprive Cotnoir of his property interest, and the individual defendants reasonably should have known that they were required to provide Cotnoir with notice of - 12 - their proposed action and an opportunity to contest their contemplated action, so that Cotnoir's participation in the process could be meaningful. See generally Collins, 894 F.2d at _____________ _______ 481 (finding that where professor had no reason to believe his tenure was being questioned, and notice of hearing was abrupt and uninformative, officials did not afford professor a real chance to present his side of the story and this violated his procedural due process rights); cf. Newman v. Burgin, 930 F.2d 955, 960 (1st __ ______ ______ Cir. 1991) (finding that tenured professor was not deprived of procedural due process when school officials provided professor with notice of proposed action, and a trial-type hearing before a neutral decisionmaker); Brasslett, 761 F.2d at 836 (finding that _________ former town fire chief was not deprived of procedural due process when he was notified of the possibility of discharge because of alleged improprieties committed while fire chief, and was afforded ample opportunity to defend his actions and rebut any erroneous allegations). 2. Failure to Provide an Explanation of Employer's 2. Failure to Provide an Explanation of Employer's Evidence Evidence When a public employee's tenured status is threatened, he is entitled to an explanation of the substance of the employer's evidence against him so that he can present his side of the story. Loudermill, 470 U.S. at 546. Based on the present __________ record, it appears that the individual defendants failed to provide Cotnoir with an explanation of their evidence against him regarding the academic incident in question. During the course of his investigation, Randall met with Cotnoir, as well as a - 13 - number of Cotnoir's colleagues and people who were otherwise involved, to determine precisely what had occurred. Randall summarized his investigation in the report which he submitted to Connick. Connick, however, never showed the report to Cotnoir; nor did anyone else. No one ever informed Cotnoir of the substance of Randall's interviews with his colleagues. Nor did anyone otherwise tell Cotnoir what in essence the evidence against him was. Therefore, Cotnoir had no way to know what the extent of the evidence was, what his alleged role in the whole scheme was, and the seriousness with which the UMA viewed the incident. Cotnoir therefore did not have an opportunity to respond to, or defend himself against the evidence presented. A reasonable official should have known that this failure to explain the evidence against an individual violated one of the basic procedural due process requirements. F. The Post-Termination Proceedings F. The Post-Termination Proceedings The individual defendants argue that Cotnoir's procedural due process rights were not violated because post- deprivation procedures were available to ensure that Cotnoir's termination was appropriate, and that he, in fact, received the benefit of these procedural protections. We disagree. Where an employee is fired in violation of his due process rights, the availability of post-termination grievance procedures will not ordinarily cure the violation. Kercad - ________ Mel ndez v. Aponte-Roque, 829 F.2d 255, 263 (1st Cir. 1987) ________ ____________ (citing Schultz v. Baumgart, 738 F.2d 231, 237 (7th Cir. 1984)), _______ ________ - 14 - cert. denied, 486 U.S. 1044 (1988). Thus, even where a _____________ discharged employee receives a post-termination hearing to review adverse personnel action, the pretermination hearing still needs to be extensive enough to guard against mistaken decisions, and accordingly, the employee is entitled to notice, an explanation of the employer's evidence, and an opportunity to present his side of the story. See Loudermill, 470 U.S. at 546; Brasslett, ___ __________ _________ 761 F.2d at 836. If an employee is fired without these pre- termination protections, normally the constitutional deprivation is then complete. Kercad -Mel ndez, 829 F.2d at 263. Thus, the ________________ post-termination grievance procedures which the individual defendants provided to Cotnoir could not compensate for a lack of pre-termination process afforded Cotnoir. We do not believe on the facts now appearing in the record, that it was reasonable for the individual defendants to have believed that their actions satisfied the minimum due process requirements. For the foregoing reasons, we affirm the decision of the district court. Affirmed. ________ - 15 -