Rhude v. Belknap County, NH          CV-99-397-JD  10/31/00

UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Christine M. Rhude

     v.                                Civil No. 99-397-JD
                                       Opinion No. 2000 DNH 234
Belknap County, New
Hampshire et al.


                            O R D E R


     The plaintiff, Christine Rhude, brings suit against her

former employer, Belknap County, New Hampshire, and several

county officials in connection with the events surrounding the

County's termination of her employment.  After Rhude filed her

first amended complaint, all but one of the defendants ("the

Belknap County defendants") moved for summary judgment (document

no. 14).  The remaining defendant, Richard Boehme, moved for

partial summary judgment (document no. 15).  Rhude also moved for

partial summary judgment (document no. 16).  Rhude subsequently

filed a second amended complaint with leave from the court.  This

complaint repeated three claims that were previously pled and

added a claim for negligent supervision.  The court granted the

Belknap County defendants leave to file a supplemental motion for

summary judgment to address the claim for negligent supervision

(document no. 33).  Therefore, the court construes the Belknap

County defendants' prior motion for summary judgment (document

no. 14) as a motion for partial summary judgment on the claims addressed therein.[1]

Rhude assents to summary judgment in Boehme's favor on the claims brought under 42 U.S.C. § 1983. Therefore, Boehme's motion for partial summary judgment is granted (document no. 15).

## Background[2]

Christine Rhude worked at the Belknap County Nursing Home from September of 1991 until May of 1998, first as a Certified Nursing Assistant and later as a clerical aide. In the spring of 1998, rumors began circulating among the nursing home staff that Richard Boehme, the Head of Environmental Services, was having an

---

[1]Normally, when an amended complaint is filed, any previously filed dispositive motions that targeted an earlier complaint become moot. In this case, leave to file a second amended complaint was granted because the new count did not involve facts that were not previously alleged. The court then permitted the defendants to supplement their previously filed motion for summary judgment in order to address the added count of negligent supervision.

[2]The facts in this section are taken from the parties' statements of material facts. The court directs the plaintiff's counsel to review the Local Rule that requires a party opposing summary judgment to support its statement of material facts with "appropriate record citations." LR 7.2(b)(2). A single reference to attached affidavits in their entirety does not satisfy the local rule's requirement.

extramarital affair with Terry Goodwin, another nursing home employee. Rhude claims that in April or May of 1998, she heard Boehme make a comment about his attraction to Goodwin. Rhude claims Boehme believed that she was inciting the rumors about the affair, and Boehme began approaching Rhude at work and calling her at home to demand that she do something to stop the rumors. Rhude asserts that she began to be afraid of Boehme. Rhude and a co-worker, Deborah White, met with the Nursing Home Administrator, Robert Chase, to complain about Boehme's behavior. Rhude told Chase that she was afraid of Boehme, but Chase took no action in response to her complaints.

On May 13, 1998, a heated altercation between Rhude and Boehme occurred at the nursing home, resulting in police being called to the scene. On May 14, Chase and Kathy Lord, Director of Nurses, met with Rhude and discussed the incident. At the end of the meeting, Chase informed Rhude that she would be suspended with pay for two weeks, and that he would send her a letter to that effect. Chase did not explicitly inform Rhude at their meeting that she might be terminated or that the Belknap County Commission would meet to discuss her possible termination. The letter of suspension he sent Rhude stated, "If you are found to share any responsibility for the incident, you are subject to disciplinary action under RSA 28:10-a. If you have any

3

questions, please feel free to contact me." The letter did not refer to a hearing or invite any other response from Rhude.

On May 20, 1998, Chase filed a report with the Belknap County Commission, recommending that Rhude's employment be terminated. That same day, the County Commission met and issued Rhude a letter notifying her that her employment would be terminated as of May 30. Rhude had no prior notice of the County Commission's meeting and was not present at the meeting. The County Commission also voted to terminate Boehme, but allowed him the opportunity to resign first, which he did.

Rhude retained counsel and appealed her termination to the Belknap County Personnel Committee by letter on June 16, 1998. Rhude's counsel, David Slawsky, and defendants' counsel, Bradley Kidder, agreed to schedule a hearing before the Personnel Committee on July 30, 1998. Slawsky made several attempts in the month of July to ascertain the procedural rules that would apply at the appeal hearing. On July 22, Kidder sent Slawsky a document titled "Appendix D: Belknap County Personnel Committee Rules for Discharge Appeal Hearings" which states that a discharge appeal hearing must be held within fifteen days of the employee's request, and that failure of the county to abide by this requirement results in immediate revocation of discharge and reinstatement. Kidder identified this "Appendix D" as part of

4

the nursing home's collective bargaining agreement. On July 24, Rhude filed a motion for immediate revocation of discharge with the Personnel Committee. On July 29, Rhude withdrew her appeal, citing uncertainty over the procedural rules that would be employed at the hearing. She subsequently filed a charge with the New Hampshire Commission for Human Rights and later, this lawsuit. Four counts are included in Rhude's second amended complaint: (1) a § 1983 claim for violation of Rhude's right to procedural due process; (2) constructive discharge; (3) negligent supervision; and (4) assault.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The record evidence is taken in the light most favorable to the nonmoving party, indulging all reasonable inferences in its favor. See Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 577 (1st Cir. 1999). The court must consider the record as a whole, and may not make credibility determinations or weigh the evidence. See Reeves v. Sanderson Plumbing Prods., Inc., 120 S.

Ct. 2097, 2110 (2000). When parties file cross motions for summary judgment, "the court must consider each motion separately, drawing inferences against each movant in turn." Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).

The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). An issue of fact is genuine if there is sufficient evidence to permit a rational fact-finder, considering the evidence in the light most favorable to the nonmoving party, to find for either party. See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

In response to a properly supported motion for summary judgment, the nonmoving party bears the burden to show a genuine issue for trial by presenting significant material evidence in support of the claim. See Tardie v. Rehabilitation Hosp., 168 F.3d 538, 541 (1st Cir. 1999). Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party will bear the burden of proof at trial, summary judgment is appropriate only if "(1) the moving party

initially produces enough supportive evidence to entitle the movant to judgment as a matter of law (i.e., no reasonable jury could find otherwise even when construing the evidence in the light most favorable to the non-movant), and (2) the non-movant fails to produce sufficient responsive evidence to raise a genuine dispute as to any material fact." Murphy v. Franklin Pierce Law Ctr., 882 F. Supp. 1176, 1180 (D.N.H. 1994) (citing Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993)).

Discussion

I. Due Process: Cross-Motions

Rhude contends that she is entitled to summary judgment on her due process claim because the defendants[3] terminated her employment without first giving her notice, explaining the evidence against her, or giving her the opportunity to present her side of the story.[4] The defendants argue that they are

_____

[3]For the rest of this order, the court's references to "the defendants" shall be understood to mean the Belknap County defendants and not Richard Boehme, unless otherwise noted.

[4]The defendants interpret Rhude's complaint to allege a separate due process claim based on deficiencies in the procedures followed after her employment was terminated. However, Rhude does not appear to make such a claim. Her motion for partial summary judgment on the due process count relies on

7

entitled to summary judgment because Rhude received due process both before and after her termination.

A.    Exhaustion of state remedies

The defendants contend that Rhude cannot bring a § 1983 due process claim because she has failed to exhaust the remedies available to her under New Hampshire law, as provided by the terms of the collective bargaining agreement between the Belknap County Nursing Home and the State Employees Association of New Hampshire.  Rhude does not address this argument in her objection to the defendants' motion.

In Patsy v. Board of Regents, 457 U.S. 496 (1982), the Supreme Court held that a plaintiff is not required to exhaust administrative remedies before asserting a § 1983 claim in

an alleged violation in the lack of pre-termination due process only.  Likewise, her objection to the defendants' motion for summary judgment does not dispute their argument that the scheduling of her post-termination hearing did not violate due process.  Instead, Rhude discusses the post-termination events in the context of the curability of any pre-termination due process violation.  Therefore, the court understands Count One of Rhude's second amended complaint to include only one claim based on a violation of her right to due process before termination of her employment.  Cf. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 n.12 (1985) (noting allegation of post-termination due process violation in administrative delay "is not an alternative theory supporting the same relief, but a separate claim altogether").

8

federal court. See Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 260-62 (1st Cir. 1987); Murphy v. City of Manchester, 70 F. Supp. 2d 62, 67 (D.N.H. 1999). The Patsy rule applies where state proceedings are remedial rather than coercive, and where "the federal plaintiff claim[s] actual injury arising from action undertaken and completed by state actors." Kercado-Melendez, 829 F.2d at 261. Here, Rhude chose not to appeal her termination through the procedures available to her under state law, so there is no ongoing state proceeding that might cause this court to abstain. See id. at 262. Accordingly, Rhude's due process claim is not precluded by her failure to exhaust available administrative procedures.

B.   Adequacy of Pre-Termination Process

The parties do not dispute that Rhude had a property interest in her continued employment with Belknap County, thereby entitling her to constitutional due process in the termination of this interest. See Loudermill, 470 U.S. at 541. They do dispute whether Rhude received all of the process due under the Constitution.

Before a tenured public employee may be terminated, she "is entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to

present [her] side of the story." Id. at 546. The First Circuit has held that to satisfy Loudermill's notice requirement, "officials must provide the individual with notice of the charges alleged against [her] and any proposed action the officials intend to take, based on those charges." Cotnoir v. Univ. of Maine Sys., 35 F.3d 6, 11 (1st Cir. 1994); cf. O'Neill v. Baker, 210 F.3d 41, 49 (1st Cir. 2000) (stating notice that termination would be considered at hearing was not required where employee had prior notice that termination could result if she did not show improvement).

The process required before termination depends in part on the specific post-termination remedies that are available to the plaintiff. See Loudermill, 470 U.S. at 1495; Brasslett v. Cota, 761 F.2d 827, 836 (1st Cir. 1985). While the existence of post-termination procedures is therefore relevant to the pre-termination due process analysis, the purpose of the pre-termination hearing is to prevent mistaken decisions and ensure that the grounds for the termination are reasonable and true. See Loudermill, 470 U.S. at 545-46. The Loudermill pre-termination requirements achieve this purpose and ordinarily, post-termination procedures will not cure a pre-termination due process violation. See Cotnoir, 35 F.3d at 12-13. Post-termination process alone may suffice where pre-termination

10

process is impractical, or where the termination results from random and unauthorized actions. See Zinermon v. Burch, 494 U.S. 113, 127-29 (1990); Herwins v. City of Revere, 163 F.3d 15, 18-19 (1st Cir. 1998); Brown v. Hot, Sexy & Safer Prods., Inc., 68 F.3d 525, 535-36 (1st Cir. 1995); Lowe v. Scott, 959 F.2d 323, 339-40 (1st Cir. 1992). Neither situation exists in this case. Therefore, the court assesses the pre-termination process provided here using the Loudermill standard.

The day after her altercation with Boehme, Rhude met with Chase and Lord to discuss what happened. She states in her affidavit, and the defendants do not dispute, that neither supervisor told her at that meeting that termination was a possibility or that the County Commission would discuss the matter. Instead, Chase informed her she would be suspended. As in Cotnoir, Rhude was warned that "unspecified disciplinary action" could result, but was not specifically told that termination was being considered. Cotnoir, 35 F.3d at 12; cf. Brasslett, 761 F.2d at 836 (finding no due process violation where employee was notified of possibility of discharge). Under the First Circuit's notice standard, Rhude did not receive notice before or during the meeting with Chase and Lord that termination was being considered. Consequently, the meeting with Chase and Lord was not a constitutionally sufficient opportunity to be

11

heard, because Rhude could not meaningfully present a case against termination without first being informed that termination was being considered. See Cotnoir, 35 F.3d at 12.

However, Chase's letter of suspension notified Rhude that she could be disciplined under RSA 28:10-a if she were found to share responsibility for the incident. RSA 28:10-a outlines the grounds and procedures for suspending or discharging county employees. See RSA 28:10-a (1988). This letter is dated May 14, 1998, six days before the County Commission decided to terminate Rhude's employment. The question arises whether this letter served as adequate notice to Rhude that her employment might be terminated, an issue that neither party has addressed.

The court need not resolve this question, however, because even if the suspension letter did give Rhude sufficient pre-termination notice, she was not given an opportunity to argue against termination after she received this notice. The suspension letter did not indicate that the County Commission would meet to discuss her case, nor did it indicate how or when it would be determined whether Rhude shared responsibility for the incident with Boehme. The suspension letter did not invite Rhude to submit any further written explanation of her actions. While the plaintiff may bear some responsibility to request a pre-termination hearing, she must at least be informed of the

12

option to request a hearing.  See, e.g., Feliciano-Angulo v. Rivera-Cruz, 858 F.2d 40, 43 (1st Cir. 1988) (plaintiff was instructed to request a hearing or respond by letter to notice of intended termination); Moody v. Town of Weymouth, 805 F.2d 30, 33 (1st Cir. 1986) (plaintiff was invited to respond by letter to notice of intended termination).

Therefore, even if the letter of suspension did provide Rhude with sufficient pre-termination notice of the specific disciplinary action being considered, she was not given an opportunity to be heard after receiving such notice.  As discussed above, the post-termination procedures do not cure this violation of Rhude's right to due process before termination.  Consequently, Rhude was not given due process prior to the County's decision to terminate her employment, and she is entitled to summary judgment on her claim that the defendants violated her right to due process prior to termination of her employment.

II.  Constructive Discharge

Count II of Rhude's second amended complaint alleges a claim for constructive discharge.  Rhude alleges that she resigned from her employment when she withdrew her appeal from the Belknap County Personnel Committee, and that she did so reasonably in

13

light of the County's actions.

A constructive discharge claim requires proof that the plaintiff was compelled to resign because of intolerable working conditions.  See Suarez v. Pueblo Int'l, Inc., __ F.3d __, 2000 WL 1477041, at *4 (1st Cir. Oct. 11, 2000); Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 613 (1st Cir. 2000). The record evidence establishes that the County terminated Rhude from her employment on May 30, 1998.  Her decision in July of 1998 not to appeal the County Commission's decision to fire her was not equivalent to a resignation, as she had already been fired.  Therefore, the defendants are entitled to summary judgment on this count.

III. Negligent Supervision

Also before the court is the defendants' supplementary motion for summary judgment on Rhude's claim of negligent supervision (document no. 33).  Rhude alleges that Robert Chase failed to properly supervise Boehme by neglecting to respond to repeated complaints about Boehme's conduct.  Rhude contends that Chase's failure to supervise Boehme led to the altercation between her and Boehme, and that Belknap County is liable through the doctrine of respondeat superior for the actions of Chase and Boehme.

14

"An employer may be directly liable for damages resulting from the negligent supervision of its employee's activities." Trahan-Laroche v. Lockheed Sanders, Inc., 139 N.H. 483, 485 (1995); see also Marquay v. Eno, 139 N.H. 708, 718 (1995) (discussing negligent hiring or retention).  Under this theory, the employer's liability is direct, not vicarious, and the employer's duty of care may extend to actions outside the scope of employment.  See Trahan-Laroche, 139 N.H. at 485.  Alternatively, "an employer may be held vicariously liable for the tortious acts of an employee committed incidental to or during the scope of employment."  Id.

Rhude's complaint refers to respondeat superior, but in her opposition to summary judgment she cites Trahan-Laroche for the direct liability theory, so it is unclear whether she proceeds under one or both theories.  The parties have not addressed whether the alleged assault by Boehme occurred within the scope of employment, and the court does not resolve that issue now.  In any event, the record evidence shows that Rhude and other employees were concerned about Boehme's hostile and abusive behavior and reported their concerns to Chase and other county officials.  The evidence also indicates that no concrete action was taken in response to these complaints.  Whether this inaction is causally linked to the altercation between Boehme and Rhude is

15

a genuine issue of material fact precluding summary judgment.

IV. Assault

Rhude has alleged a claim of assault against the defendant, Boehme, concerning which no dispositive motions have been filed. In her second amended complaint, Rhude added an allegation that Belknap County is liable for Boehme's actions under the doctrine of respondeat superior. The Belknap County defendants did not move to supplement their motion for summary judgment to address this allegation.

Conclusion

The defendant Boehme's motion for partial summary judgment on Count II of the first amended complaint (document no. 15) shall be construed as a motion for partial summary judgment on Count I of the second amended complaint, and is granted.

The plaintiff's motion for partial summary judgment on Count II(c) of the first amended complaint (document no. 16) shall be construed as a motion for partial summary judgment on Count I of the second amended complaint, and is granted against the Belknap County defendants.

The Belknap County defendants' motion for summary judgment (document no. 14) is construed as a motion for partial summary

16

judgment and is denied as to Count I of the second amended complaint, and is granted as to Count II of the second amended complaint.  The Belknap County defendants' supplemental motion for summary judgment on Count III of the second amended complaint (document no. 33) is denied.

A number of issues raised in this case have been resolved by this order.  The parties should engage in good faith efforts to arrive at a nontrial disposition of the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

October 31, 2000

cc:  David P. Slawsky, Esquire
     John T. Alexander, Esquire
     Naomi L. Mooney, Esquire