**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 13-4077

————————

JAMES LUCIANI,
                                        Appellant

v.

CITY OF PHILADELPHIA;
DENNIS R. CURCIO, Co-Administrators of The Estate of Enrico Foglia, Deceased;
ROBERT FOGLIA, Co-Administrators of The Estate of Enrico Foglia, Deceased

————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-10-cv-02918)
District Judge: Honorable Thomas N. O'Neill, Jr.

————————

Argued November 19, 2014

Before: AMBRO, SCIRICA and ROTH, Circuit Judges

(Opinion filed: March 7, 2016)


Robert A. Davitch, Esquire
Gary Green, Esquire                    **(Argued)**
Sidkoff, Pincus & Green
1101 Market Street
Suite 2700
Philadelphia, PA 19107


            Counsel for Appellant

Jane L. Istvan, Esquire          **(Argued)**
City of Philadelphia
Law Department
1515 Arch Street, 17th Floor
One Parkway
Philadelphia, PA 19102

        Counsel for Appellees

---

OPINION[*]

---

ROTH, Circuit Judge

James Luciani appeals two orders of the District Court, one granting summary judgment to the City of Philadelphia and two individual defendants and the other denying Luciani's motion for leave to amend his complaint. For the reasons set forth below, we will affirm both orders.

**I.**

Luciani worked for the City of Philadelphia for twenty-three years before being terminated in July 2008. Luciani was formally terminated for residing in New Jersey, in violation of Philadelphia's Civil Service Regulations requirement that he live in Philadelphia.[1] On June 17, 2010, Luciani filed this Section 1983 action, alleging that his termination was actually a result of his blowing the whistle on corruption in the City's

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] *See* Phila. Civ. Serv. Regs. § 30.01.

Board of Revision of Taxes (BRT), and that he was being retaliated against in violation of the First Amendment. Luciani maintains that he has always lived in Philadelphia and that the charge that he lived in New Jersey was pretext for his termination. Luciani also alleges that he was denied due process because the outcome of his "sham" pre-termination hearing was predetermined.

In Luciani's initial complaint, he alleged only his whistleblowing and his allegedly pretextual termination. On January 27, 2012, after the close of discovery, Luciani moved to amend his complaint. The proposed amended complaint (PAC) adds allegations of a conspiracy between two FBI agents, Brian Nichilo and Raymond Manna, and a contractor with the City's Office of Inspector General (OIG), Thomas Steel. Luciani asserts that he did not uncover evidence of the conspiracy until late in discovery, despite the names of all three purported conspirators appearing in the City's initial disclosures and all three being deposed at least five months before Luciani's motion for leave to amend his complaint. Nichilo and Steel allegedly manufactured evidence regarding Luciani's residence, including an allegedly fabricated confession from Luciani that he lived in New Jersey, and brought Manna into the scheme to act as a false witness. According to Luciani, the goal of the alleged conspiracy was to use the threat of exposing Luciani's living outside the City, which could result in his termination, to extract from Luciani incriminating information about Vincent Fumo, a former state senator later convicted of corruption. The FBI/OIG investigation ultimately led to Luciani's dismissal for failing to maintain a residence within the City of Philadelphia.

3

## II.[2]

The District Court denied Luciani's motion for leave to amend his complaint and granted summary judgment to the City. As counsel noted at oral argument, a finding that leave to amend should have been granted would make this matter "a completely different case." For that reason, we will address Luciani's motion for leave to amend before turning to the District Court's grant of summary judgment.

We review the District Court's denial of leave to amend for abuse of discretion.[3] Under Federal Rule of Civil Procedure 15(a)(2), a "court should freely give leave when justice so requires."[4] While "[a] district court may deny leave to amend a complaint where it is apparent from the record that '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party,'"[5] "delay alone is an insufficient ground to deny leave to amend."[6]

The District Court did not abuse its discretion in denying Luciani's motion for leave to amend his complaint. Luciani had access to the OIG report containing the allegedly false information and knowledge of the FBI and OIG personnel involved prior to filing his suit. The complete file was provided to Luciani, again, as part of the City's disclosures in this matter, as were the names of the FBI special agents involved. The

---

[2] The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and we have jurisdiction pursuant to 28 U.S.C. § 1291.

[3] *United States ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014).

[4] Fed. R. Civ. P. 15(a)(2).

[5] *Schumann*, 769 F.3d at 849 (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)).

[6] *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

facts on which Luciani's proposed *Bivens* claim rests were well known to him, at the very least, by September 2011, when he had completed deposing the relevant witnesses and had reviewed the OIG file. Yet, despite ample time remaining in the discovery period to file a motion to amend, Luciani did not so move until after discovery had closed. The District Court's finding of unexplained delay was, therefore, not an abuse of discretion.

Nor was the District Court's finding of undue prejudice to the defendants based merely on the delay. "[P]rejudice to the non-moving party is the touchstone for denial of an amendment,"[7] and we have found previously that changing the legal and factual basis of a claim can create undue prejudice.[8] As previously noted, Luciani's motion for leave to amend purported to add new legal bases for relief as well as new defendants who were previously merely potential witnesses. Far from being a change that resulted in "no additional discovery, cost, and preparation to defend against new . . . theories,"[9] granting Luciani's motion would have resulted in the re-opening of discovery and substantial additional motions practice to accommodate the new defendants and allegations. One need look no further than Luciani's own counsel's assessment that the amended complaint would have been "a completely different case" in order to see the obvious prejudice that would have resulted from allowing amendment at the eleventh hour. Consequently, we conclude that the District Court did not abuse its discretion in denying Luciani's motion for leave to amend.

---

[7] *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting *Cornell & Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).
[8] *See Cureton*, 252 F.3d at 273.
[9] *Id.*

5

Turning to the merits of the complaint, Luciani contends that he was denied his constitutionally guaranteed procedural due process in the loss of his property interest in his public employment because his pre-termination hearing was a "sham." This argument is unavailing. While some kind of pre-termination proceeding is necessary before a public employee is terminated, this proceeding may be relatively informal and need not be conducted by an unbiased factfinder or the ultimate decision-maker.[10] The proceeding need only advise the employee of the charges against him, provide a general explanation of the employer's evidence, and give the employee an opportunity to make a case on his own behalf.[11] If the Commonwealth provides adequate post-termination proceedings, with an appropriately neutral decision-maker empowered to rectify any errors, the employee's rights to procedural due process are preserved.[12]

Luciani's contention that the pre-termination hearing to which he was subjected had a predetermined outcome is ultimately immaterial to his procedural due process claim. He admits that he had a union grievance and civil service procedure to which he could resort after the pre-termination proceeding found against him. He also admits that he did not complete the post-termination proceeding because he did not want to wait for its results. Since Luciani failed to avail himself of the available, constitutionally sufficient avenues for relief, his procedural due process claim must fail.[13]

---

[10] *McDaniels v. Flick*, 59 F.3d 446, 460 (3d Cir. 1995).
[11] *Id.* at 454.
[12] *Id.* at 460.
[13] *See Dykes v. SE Penn. Transp. Auth.*, 68 F.3d 1564, 1572 (3d Cir. 1995); *McDaniels*, 59 F.3d at 460.

Luciani's reliance on our decisions in *Alvin v. Suzuki*[14] and *Schmidt v. Creedon*[15] for the proposition that a pre-termination proceeding can be so infected with bias as to render any post-termination relief inadequate is misplaced. In *Alvin*, we held that a university professor's failure to follow the university's grievance procedure eliminated any procedural due process claim and the burden is on the public employee to follow the appropriate procedures.[16] Far from supporting Luciani's case, *Alvin* favors the result reached by the District Court. Luciani similarly failed to follow through on his right to a post-deprivation proceeding before an impartial decision-maker.

*Schmidt* offers no support for Luciani's position and is inapposite. In *Schmidt*, we held that, absent extraordinary circumstances, some form of pre-deprivation proceeding was necessary before suspending an employee from a position in which he had a property interest, even if constitutionally adequate post-deprivation proceedings are available.[17] The critical fact in *Schmidt* was the absence of *any* pre-deprivation proceeding.[18] Here, there is no dispute that Luciani was given a pre-termination hearing. Instead, Luciani's complains that the hearing's outcome was predetermined and his claims were rejected. Merely rejecting an employee's claims at a pre-termination proceeding is not a constitutional violation, so long as adequate post-termination remedies exist to satisfy

---

[14] 227 F.3d 107 (3d Cir. 2000).
[15] 639 F.3d 587 (3d Cir. 2011).
[16] 227 F.3d at 117.
[17] 639 F.3d at 589–90.
[18] *Id.* at 597.

procedural due process.[19]  Thus, we will affirm the District Court's grant of summary judgment to the City on Luciani's procedural due process claims.

Luciani's substantive due process claim fails because Luciani's property interest in his public employment is not subject to substantive due process protection. [20]   Without a protected property interest, there can be no substantive due process claim, as the District Court correctly held.  We will affirm the District Court's grant of summary judgment to the City on Luciani's substantive due process claim.

As for Luciani's First Amendment retaliation claim, the District Court held that Luciani had engaged in protected speech by complaining about alleged corruption in his office to the City Controller, but that he had failed to offer proof that this speech was a factor in his termination.  Luciani contends that his own perception of increased "antagonism" from his supervisors, combined with his recollection of conversations with other City employees, is sufficient to raise an issue of material fact for trial.  It is not.  At the summary judgment stage, it is axiomatic that a plaintiff must come forward with some affirmative evidence to support his claim.[21]

Nor can Luciani rely on perceived deficiencies in his pre-termination proceedings as evidence of a retaliatory motive:  he has offered no evidence that these perceived deficiencies, such as declining to produce to him a full, confidential OIG report until after the pre-termination hearing, were motivated by his whistle-blowing statements.  Indeed, Luciani argues that a "rogue agent" of law enforcement, apparently miffed at Luciani's

---

[19] *See McDaniels*, 59 F.3d at 456 n.5.
[20] *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000).
[21] *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

8

lack of knowledge about an investigation Luciani *did not* have knowledge about, included allegedly false information in the OIG report that the City later relied upon in his pre-termination proceeding.  If Luciani's theory is correct, the OIG report would have eventually led to the termination proceedings regardless of whether Luciani had spoken to the Controller, an outcome the District Court noted was corroborated by deposition testimony.  The ten month interval between Luciani's statements to the Controller in September 2007 and his pre-termination proceedings in July 2008 also militates against a finding of causation based solely on temporal proximity.[22]  Consequently, we will affirm the District Court's grant of summary judgment to the City on Luciani's First Amendment retaliation claims.

### III.

For the reasons stated above, we will affirm the two orders of the District Court.

---

[22] *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 303 n.14 (3d Cir. 2007) (noting it is "undoubtedly correct" that a nine month lapse in time between First Amendment conduct and alleged retaliatory act is insufficient evidence, standing alone, from which to infer causation).

James Luciani v. City of Philadelphia, et al.
No. 13-4077

_____

AMBRO, Circuit Judge, dissenting in part

I agree with my colleagues that the District Court did not err in denying Luciani's

motion to amend his complaint. I would also not disturb the dismissal of the substantive

due process claim. They and I differ, however, as to the entry of summary judgment

against Luciani on the remainder of his claims. In my view, he presented sufficient

evidence of procedural due process and retaliation claims to survive summary judgment.

For that reason, I respectfully dissent in part.

Beginning with the procedural due process claim, my majority colleagues reject

the argument that the pre-termination hearing was a "sham." But they forget that Luciani

also alleged that defendants violated procedural due process by failing to give him proper

notice of the evidence used to fire him. Prior to a pre-termination hearing, an employee

"is entitled to oral or written notice of the charges against him, an explanation of the

employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd.

of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). When an employee facing a pre-

termination hearing is not given sufficient notice of the evidence against him, this is a

violation of the employee's right to procedural due process. *See, e.g.*, *Cotnoir v. Univ. of

Maine Sys.*, 35 F.3d 6, 12 (1st Cir. 1994) (university violated due process by failing to

provide professor who was fired with copies of the investigation report and the content of

the interviews on which it was based). Indeed, "a *sin[e] qua non* of a meaningful

1

hearing is sufficient explanation of the employer's evidence to permit a meaningful response." *Fraternal Order of Police Lodge No. 5 v. Tucker*, 868 F.2d 74, 80 (3d Cir. 1989). I would reverse the District Court's grant of summary judgment on the procedural due process claim because Luciani was denied access to a critical piece of evidence before the pre-termination hearing and was hampered in his ability to defend against the allegation that he violated the City's residency requirements.

Luciani's only notice before the hearing of the evidence against him was a letter stating, in general terms, that a recent investigation by the Office of the Inspector General ("OIG") had concluded that he resided in New Jersey based in part on information from the FBI. We know now that a key piece of evidence was an OIG report that Luciani had admitted to an FBI agent—during an interview unrelated to the investigation into his residency—that he had lived in New Jersey for the past twenty years. The problem is that even though the City, the OIG, and the FBI knew about the alleged confession, Luciani states he did not. He denies having ever told the agent during the interview that he lived in New Jersey, and on summary judgment we should construe the evidence on this point in his favor.

Up to and through the time of the pre-termination hearing, the City never disclosed to Luciani this key evidence against him, *and this was so despite his requests*. Before Luciani's hearing, his union representative requested, among other things, the OIG report. A City employee refused, explaining that the report was a "confidential document" that was part of the City's evidence but not subject to disclosure. During the hearing, Luciani's attorney renewed the request for a copy of the report and was again

2

rebuffed on the ground of confidentiality. Remarkably, no one at the hearing referenced Luciani's statement to the FBI or questioned him about the statement, notwithstanding that supervisors later testified this was a significant piece of evidence. At the hearing, Luciani was thus unable to challenge the veracity of the admission or the credibility of the FBI agent. In these circumstances, there is a genuine dispute as to whether defendants gave him sufficient notice of the evidence—a dispute that deserves to be decided by a jury, not a judge on summary judgment.

The majority asserts that any procedural due process claim "must" fall because Luciani "failed to avail himself of the available, constitutionally sufficient avenues for relief." Majority Op. at 6. After the pre-termination hearing, Luciani filed a grievance with the City to challenge his termination, and the City finally gave his union representative a copy of the OIG report. On the surface, this may seem a good reason to dismiss the procedural due process claim because Luciani could have challenged his admission to the FBI through the grievance procedure. Case law does not support this result, however. True enough, we have held that a plaintiff who fails to take advantage of *post*-termination procedures cannot later bring a procedural due process claim on the theory that the decisionmaker at the pre-termination hearing was biased. *See McDaniels v. Flick*, 59 F.3d 446, 460 (3d Cir. 1995); *Dykes v. Se. Pa. Transp. Auth.*, 68 F.3d 1564, 1571-72 (3d Cir. 1995). But we have not extended this requirement to cases like the one before us now, where the allegation is that defendants deprived Luciani of constitutionally mandated *pre*-termination procedures. *See Alvin v. Suzuki*, 227 F.3d 107, 120 (3d Cir. 2000) ("[I]f the Constitution requires pre-termination procedures, the most

3

thorough and fair post-termination hearing cannot undo the failure to provide such procedures."). Moreover, Luciani reached an agreement with the City to resolve the grievance that preserved his right to bring this lawsuit. Under the agreement, Luciani agreed to withdraw the grievance but not release the City from any claims related to his termination, and in return the City agreed to change his termination retroactively to reflect a retirement so that he could receive pension benefits as of July 2008. In these circumstances, I would not punish him for making this deal by dismissing the procedural due process claim.

Turning to the First Amendment retaliation claim, there is a genuine issue of whether there was a causal connection between Luciani's protected speech and his termination. To establish a causal connection a plaintiff typically "must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Although this a close question, there is for me enough evidence of a pattern of antagonism and suggestive timing to survive summary judgment.

Consider this truncated summary of events: in September 2007, Luciani expressed concern to his supervisors about a "pattern of corruption" in the City's Board of Revision of Taxes. Luciani heard from another employee that Charlesretta Meade, Chair of the Board of Revision of Taxes, was "livid" that Luciani was "blowing the whistle" and had

4

"spoke[n] out against the department."[1]  Sometime that same month, an FBI agent interviewed Luciani about an unrelated matter and asked about his residency.  In October 2007, the FBI told the OIG that Luciani had admitted to living outside Philadelphia and the OIG began its investigation into his residency.  In January 2008, Luciani told Meade that he thought the OIG was trying to recruit him as a whistleblower.  In February and March 2008, Luciani met with an OIG investigator and an FBI agent on three occasions to discuss corruption at the Board of Revision of Taxes.  During one of the March meetings, Luciani agreed to provide significantly more information about corruption on the condition that the residency investigation be dropped.  In March 2008, Luciani expressed concern in an email that management thought he was a whistleblower and that he might be retaliated against.  On June 6, 2008, the OIG issued its report and found a violation of the residency policy.  On June 19, 2008, the City notified Luciani that it intended to fire him.

This timeline of events raises enough suspicions that a reasonable juror could conclude that the City used the residency investigation as pretext for firing Luciani in retaliation for his September 2007 statement.  Accordingly, I would also reverse the District Court's grant of summary judgment on the retaliation claim and let the case proceed to trial.  For these reasons, I respectfully dissent in part.

---

[1] The District Court and my majority colleagues find Luciani's recollection of the conversation insufficient to raise an issue of material fact for trial.  "There is simply no rule of law," however, "that provides that a discrimination plaintiff may not testify in his or her own behalf, or that such testimony, standing alone, can never make out a case of discrimination that will survive a motion for summary judgment."  *Jackson v. Univ. of Pittsburgh*, 826 F.2d 230, 236 (3d Cir. 1987).