AMBRO, Circuit Judge, dissenting in part.
I agree with my colleagues that the District Court did not err in denying Lu-ciani’s motion to amend his complaint. I would also not disturb the dismissal of the substantive due process claim. They and I differ, however, as to the entry of summary judgment against Luciani on the remainder of his claims. In my view, he presented sufficient evidence of procedural due process and retaliation claims to survive summary judgment. For that reason, I respectfully dissent in part.
Beginning with the procedural due process claim, my majority colleagues reject the argument that the pre-termination hearing was a “sham.” But they forget that Luciani also alleged that defendants violated procedural due process by failing to give him proper notice of the evidence used to fire him. Prior to a pre-termi-nation hearing,, an employee “is entitled to oral or written notice of the charges against him, an explanation of the employer’s evidence, and an opportunity to present his side of the story.” Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). When an employee facing a pre-termi-nation hearing is not given sufficient notice of the evidence against him, this is a violation of the employee’s right to procedural due process. See, e.g., Cotnoir v. Univ. of Maine Sys., 35 F.3d 6, 12 (1st Cir.1994) (university violated due process by failing to provide professor who was fired with copies of the investigation report and the content of the interviews on which it was based). Indeed, “a sin[e] qua non of a meaningful hearing is sufficient explanation of the employer’s evidence to permit a meaningful response.” Fraternal Order of Police Lodge No. 5 v. Tucker, 868 F.2d 74, 80 (3d Cir.1989). I would reverse the District Court’s grant of summary judgment on the procedural due process claim because Luciani was denied access to a critical piece of evidence before the pre-termi-nation hearing and was hampered in. his ability to defend against the allegation that he violated the City’s residency requirements.
Lueiani’s only notice before the hearing of the evidence against him was a letter stating, in general terms, that a recent investigation by the Office of the Inspector General (“OIG”) had concluded that he resided in New Jersey based in part on information from the FBI. We know now that a key piece of evidence was an OIG report that Luciani had admitted to an FBI agent — during an interview unrelated to the investigation into his residency'— that he had lived in New Jersey for the past twenty years. The problem is that even though the City, the OIG, and the FBI knew about the alleged confession, Luciani states he did not. He denies having ever told the agent during the interview that he lived in New Jersey, and on summary judgment we should construe the evidence on this point in his favor.
*115 Up to and through the time of the pre-termination hearing, the City never disclosed to Luciani this key evidence against him, and this was so despite his requests. Before Luciani’s hearing, his union representative requested, among other things, the OIG report. A City employee refused, explaining that the report was a “confidential document” that was part of the City’s evidence but not subject to disclosure. During the hearing, Luciani’s attorney renewed the request for a copy of the report and was again rebuffed on the ground of confidentiality. Remarkably, no one at the hearing referenced Luciani’s statement to the FBI or questioned him about the statement, notwithstanding that supervisors later testified this was a significant piece of evidence. At the hearing, Luciani was thus unable to challenge the veracity of the admission or the credibility of the FBI agent. In these circumstances, there is a genuine dispute as to whether defendants gave him sufficient notice of the evidence — a dispute that deserves to be decided by a jury, not a judge on summary judgment.
The majority asserts that any procedural due process claim “must” fall because Luciani “failed to avail himself of the available, constitutionally sufficient avenues for relief.” Majority Op. at 112. After the pre-termination hearing, Luciani filed a grievance with the City to challenge his termination, and the City finally gave his union representative a copy of the OIG report. On the surface, this may seem a good reason to dismiss the procedural due process claim because Luciani could have challenged his admission to the FBI through the grievance procedure. Case law does not support this result, however. True enough, we have held that a plaintiff who fails to take advantage of posi-termi-nation procedures cannot later bring a procedural due process claim on the theory that the decisionmaker at the pre-termi-nation hearing was biased. See McDaniels v. Flick, 59 F.3d 446, 460 (3d Cir.1995); Dykes v. Se. Pa. Transp. Auth., 68 F.3d 1564, 1571-72 (3d Cir.1995). But we have not extended this requirement to cases like the one before us now, where the allegation is that defendants deprived Luciani of constitutionally mandated pre-termination procedures. See Alvin v. Suzuki, 227 F.3d 107, 120 (3d Cir.2000) (“[I]f the Constitution requires pre-termination procedures, the most thorough and fair post-termination hearing cannot undo the failure to provide such procedures.”). Moreover, Luciani reached an agreement with the’ City to resolve the grievance that preserved his right to bring this lawsuit. Under the agreement, Luciani agreed' to withdraw the grievance but not release the City from any claims related to his termination, and in return the City agreed to change his termination retroactively to reflect a retirement so that he could receive pension benefits as of July 2008. In these circumstances, I would not punish him for making this deal by dismissing the procedural due process claim.
Turning to the First Amendment retaliation claim, there is a genuine issue of whéther there was a causal connection between Luciani’s protected speech and his termination. To establish a causal connection a plaintiff typically “must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.” Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir.2007). Although this a close question, there is for me enough evidence of a pattern of antagonism and suggestive timing to survive summary judgment.
Consider this truncated summary of events: in September 2007, Luciani expressed concern to his supervisors about a *116 “pattern of corruption” in the City’s Board of Revision of Taxes. Luciani heard from another employee that Charlesretta Meade, Chair of the Board of Revision of Taxes, was “livid” that Luciani was “blowing the whistle” and had “spoke[n] out against the department.”[1] Sometime that same month, an FBI agent interviewed Luciani about an unrelated matter and asked about his residency. In October 2007, the FBI told the OIG that Luciani had admitted to living outside Philadelphia and the OIG began its investigation into his residency. In January 2008, Luciani told Meade that he thought the OIG was trying to recruit him as a whistleblower. In February and March 2008, Luciani met with an OIG investigator and an FBI agent on three occasions to discuss corruption at the Board of Revision of Taxes. During one of the March meetings, Lucia-ni agreed to provide significantly more information about corruption on the condition that the residency investigation be dropped. In March 2008, Luciani expressed concern in an email that management thought he was a whistleblower and that he might be retaliated against. On June 6,2008, the OIG issued its report and found a violation of the residency policy. On June 19, 2008, the City notified Luciani that it intended to fire him.
This timeline of events raises enough suspicions that a reasonable juror could conclude that the City used the residency investigation as pretext for firing Luciani in retaliation for his September 2007 statement. Accordingly, I would also reverse the District Court’s grant of summary judgment on the retaliation claim and let the case proceed to trial. For these reasons, I respectfully dissent in part.

. The District Court and my majority colleagues find Luciani’s recollection of the conversation insufficient to raise an issue of material fact for trial. "There is simply no rule of law,” however, "that provides that a discrimination plaintiff may not testify in his or her own behalf, or that such testimony, standing alone, can never make out a case of discrimination that will survive a motion for summary judgment.” Jackson v. Univ. of Pittsburgh, 826 F.2d 230, 236 (3d Cir.1987).