Charles CAUDLE, Plaintiff,

v.

Harry THOMASON, Defendant.

No. Civ.A. 94–0707(HHG).

United States District Court,
District of Columbia.

Oct. 6, 1997.

Richard H. Matthews, Douglas E. Kahle, Glen W. Thompson, David L. Arnold, Pender & Coward, Virginia Beach, VA, James K. Archibald, David W. Goewey, Venable, Baetjer, Howard & Civiletti, Washington, DC, for Plaintiff.

Robert S. Bennett, Richard L. Brusca, Amy R. Sabrin, Katharine S. Sexton, Skadden, Arps, Slate, Meagher & Flom, Washington, DC, for Defendant; Michael J. Plonsker, Lavely & Singer, Los Angeles, CA, of counsel.

## OPINION

HAROLD H. GREENE, District Judge.

This case arises out of a controversy surrounding the White House Travel Office. The matter is before the Court on defendant's motion for summary judgment. Upon consideration of the motion, plaintiff's opposition, defendant's reply, and the arguments of counsel at a hearing, the Court concludes that the motion should be granted and summary judgment be entered for the defendant.

### I

### Background

Plaintiff Charles Caudle was the President and Chief Executive Officer of Airline of the Americas, Inc. ("AOA"). AOA, later renamed UltrAir, was a commercial charter air service. It conducted a substantial amount of business for the White House Travel office, in 1992 alone providing more than $2 million of domestic air travel service to the White House Press Corps. Defendant Harry Thomason is part owner of Thomason, Richland, and Martens, Inc. ("TRM"), an aviation consulting firm. According to Caudle, Thomason began a campaign in October 1992 to discredit AOA in order to gain the White House Press Corps charter business for TRM. As a result of these efforts, Caudle claims, AOA lost its business with the White House Travel Office, and Caudle thereupon filed this action against Thomason for libel and slander.

Plaintiff's libel claim[1] is premised exclusively on a memorandum written by Darnell Martens (the "Memorandum"), part owner and President of TRM, and circulated to White House officials by Thomason.[2] The Memorandum recounts a conversation with Billy Ray Dale, then Director of the White House Travel Office, in which Martens inquired about TRM bidding for the White House Press charters. According to Martens, Dale stated categorically that the Travel Office would not accept competitive bids for these charters, regardless of the price or the services another company might offer.

After this conversation Martens began to gather information on AOA and its relationship with the Travel Office which he included in the Memorandum and which he marked "CONFIDENTIAL."[3] He concluded that AOA enjoyed an almost exclusive arrangement with respect to providing charter service to the White House Press Corps; that AOA had violated federal election laws; and that it had been investigated by the United States Department of Transportation and the Federal Election Commission.[4]

1. The Court dismissed the slander claim on April 25, 1996, as barred by the statute of limitations.

2. Martens drafted the memorandum after a conversation with Billy Ray Dale, Director of the White House Travel Office.

3. The Memorandum was entitled "White House Press Charters."

4. Specifically, this part of the Memorandum states:

[AOA] is a Republican-operated charter airline. The company ran into controversy during the [1992] presidential campaign when it provided press transportation without chargebacks to the press in order to insure good press coverage of Bush campaign appearances.

Martens advised Thomason of his conversation with Dale; Thomason became alarmed by the Travel Office's apparent refusal to take competitive bids; and he mentioned the matter to David Watkins, then Assistant to the President for Management and Administration. Thomason further states that shortly thereafter, at a White House correspondents dinner, he again became concerned after overhearing the president of a press organization bemoan the high cost of White House press charters. He revisited the matter with Watkins and in connection with meetings with Watkins, and other White House staffers on this issue, he contacted Martens to find out what information he had obtained on AOA and its relationship with the Travel Office.

Martens forwarded Thomason a copy of the Memorandum, which Thomason then gave to Watkins. Thomason maintains that the purpose of this communication was to alert the proper White House officials about the goings on in the Travel Office and to avert any scandal that might erupt over its relationship with AOA.

Following these meetings, Watkins involved other White House officials about the matter. The Memorandum was eventually leaked to the press, although both parties deny any involvement in the leak.

Caudle alleges that the Memorandum is libelous per se because, among other things, it contains inaccurate and untrue allegations that both he and ADA engaged in illegal activities. He claims that Thomason is liable for the publication of the Memorandum because he provided it to White House officials. Candle also alleges that Thomason is responsible for the republication of the Memorandum because he knew or should have known that the Memorandum would be disseminated to the media. He seeks damages in excess of $80 million dollars.

## II

As indicated, Thomason has moved the Court for summary judgment on Caudle's sole remaining libel claim. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). For purposes of summary judgment, "the requirement is that there be no genuine issue of *material* fact." *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). In determining this, a court must draw all justifiable inferences in favor of the non-moving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law may the Court grant summary judgment.[5]

## III

### *Common Interest Privilege*

Defendant has advanced several affirmative grounds for summary judgment in his favor, but only one needs to be discussed in detail: judgment is appropriate in favor of Thomason because the communication of the Memorandum, which is the crux of the law-

AOA wanted the flights to be considered a contribution but this was denied by the FEC/DOT subsequent to a complaint initiated by David Buxbaum of the Clinton/Gore '92 Committee. The uncompensated flights were discontinued to the satisfaction of the concerned government agencies.
Plaintiff's Amended Complaint, Exhibit 1.

5. The Court has serious doubts about whether the evidence presented by plaintiff in opposition to defendants motion for summary judgment could overcome the hearsay hurdle. *See Kimberlin v. Quinlan*, 6 F.3d 789, 797 n. 15 (D.C.Cir. 1993) (citing *Crawford–El v. Britton*, 951 F.2d 1314, 1320 (D.C.Cir.1991)). The Court need not decide that issue, however, because summary judgment is appropriate based on the common interest privilege.

suit, was privileged and may not be the basis for recovery.[6]

■ Specifically, Thomason's transmittal of the Memorandum is protected by the "common interest" privilege. This common law privilege shields an otherwise defamatory statement from liability as long as the statement was: (1) made in good faith; (2) on a subject in which the communicating party has an interest, or in reference to which he has a duty to another party who has a corresponding interest; and (3) made to a party with a corresponding interest. *Columbia First Bank v. Ferguson*, 665 A.2d 650, 655 (D.C.1995) (quoting *Moss v. Stockard*, 580 A.2d 1011, 1024 (D.C.1990)).

■ This privilege clearly applies to Thomason's communication of the Memorandum.[7] As a friend of and advisor to President Clinton, Thomason had an interest in assuring the smooth functioning of the Administration. Thomason claims in this regard that he became concerned that there was misconduct or mismanagement within the White House Travel Office. It was on this basis that he gave the Memorandum to David Watkins, then Assistant to the President for Management and Administration, who was the proper official to investigate and address these potential problems.

Thomason and Watkins thus shared a common interest in ferreting out possible corruption within the White House and in avoiding a scandal that might reflect poorly on the Clinton Administration. *See Roland v. d'Arazien*, 685 F.2d 653, 655 (D.C.Cir.1982) (in which our Court of Appeals found a common interest in "the smooth and efficient operation of [a congressman's] office" which privi-

leged a report from a legislative assistant to the staff director of the office).

This mutual interest protects the communication of the Memorandum in this case because it was a reasonable means of furthering the interest. The Memorandum raised the possibility that AOA had provided free or discounted flights to the media to curry favorable political coverage for then-President George Bush. It also questioned the propriety of AOA's exclusive arrangement with the Travel Office.[8] This was information that White House officials undoubtably needed to have in order to investigate the possibility of misconduct. Providing this Memorandum, as well as the information it contained, was a reasonable means of furthering this mutual interest.

Caudle does not dispute any of the material facts described above. He argues, however, that even if Thomason's actions were privileged he is not entitled to summary judgment because specific facts have been set forth that reveal that Thomason abused the privilege.

■ The common interest privilege may be defeated if the plaintiff can show that an allegedly libelous statement was communicated with common law "malice." *Mosrie v. Trussell*, 467 A.2d 475, 477 (D.C.1983). Malice is defined as "the equivalent of bad faith. It is the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will." *Moss v. Stockard*, 580 A.2d at 1025 (citations omitted).

The plaintiff has the burden to establish the defendants abuse of a conditional privi-

---

6. Thomason also argues that his communication was protected by his constitutional privilege to petition the government. This privilege shields communications which inform government officials of possible wrongdoing by their subordinates. See *Bradley v. Computer Sciences Corp.*, 643 F.2d 1029, 1033 (4th Cir.1981). Given the Court's determination that the communication is covered by the common interest privilege, the Court need not address the merits of this alternative argument.

7. Whether a qualified privilege applies is a question of law for the Court. *Mosrie v. Trussell*, 467 A.2d 475, 477 (D.C.1983).

8. In one section the Memorandum states

What significance, if any, can be attributed to the coincidence that essentially the same individuals at both The White House and at Pan Am/AOA have been handling the press charter business for a protracted period of time? Is it a matter of just being easier to call one operator? If so, then the Travel Services Department is not doing its job. If it's something else, then what?
Plaintiff's Amended Complaint, Exhibit 1.

lege. Here, Caudle has failed to produce facts that establish malice or bad faith.

◼ Caudle claims that Thomason transmitted the Memorandum to obtain for his own company the domestic charter business performed by AOA. As defendant correctly points out, however, the privilege protects even communications in furtherance of a financial or proprietary interest. *See Kennedy v. Children's Service Soc. of Wisconsin,* 17 F.3d 980, 985 (7th Cir.1994); *Flotech, Inc. v. E.I. DuPont de Nemours & Co.,* 814 F.2d 775, 778 (1st Cir.1987). The plaintiff must establish more than a desire for personal or financial gain to prove malice or bad faith.

Caudle does allege that Thomason communicated the Memorandum with full knowledge that it was untrue and inaccurate. However, the undisputed facts suggest the opposite.[9] In his declaration, Thomason stated that he had faith in Martens' word and that he trusted Martens' belief that the information in the Memorandum was accurate. He knew that Martens had a foundation for this knowledge because Martens had personally spoken with Billy Dale, and others, about the relationship between AOA and the Travel Office.

◼ When assessing evidence of malice, the Court must

> look[ ] to the primary motive by which the defendant is apparently inspired; and, the fact that he feels resentment and indignation towards the plaintiff and enjoys defaming him will not forfeit the privilege so long as the primary purpose is to further the interest which is entitled to protection. *Mosrie,* 467 A.2d at 477 (citations omitted).

◼ In sum, Caudle has not shown a triable issue of fact with respect to Thomason's bad faith in communicating the Memorandum. Nor has Caudle adduced any facts which suggest that Thomason republished the Memorandum to the press. To defeat the privilege, Caudle must show by way of evidence that Thomason knowingly published the Memorandum to those outside of the scope of the privilege. RESTATEMENT (SECOND) OF TORTS § 604 (1976). The undisputed facts instead reveal that Thomason gave the Memorandum only to those who had the authority over the operations of the Travel Office. Further, the Memorandum was marked "CONFIDENTIAL" and Thomason declared that he was given express assurances that it would remain so. Even drawing all inferences in favor of Caudle, the Court finds that there is no genuine dispute over this issue.

After exhaustive discovery, Caudle has failed to show any facts that would remove Thomason's transmittal of the Memorandum from the protection of the common interest privilege.

## IV

### *Conclusion*

This action was filed in 1994. Since then, Caudle has not been able to produce facts that rebut Thomason's assertion of the common interest privilege or that demonstrate that Thomason forfeited this privilege. Caudle has not met his burden to demonstrate that there is a genuine issue of material fact that should proceed to trial. The Court will therefore enter summary judgment in favor of the defendant Thomason pursuant to Fed. R.Civ.P. 56.

An Order consistent with the foregoing is being issued contemporaneously herewith.

---

9. On the March 5 cover sheet attached to the Memorandum, Martens stated "I cannot yet prove everything contained in the [Memorandum].... but I do believe it all to be true...." Even if one could infer bad faith from the existence of this cover sheet, there are no facts to contradict Thomason's assertion that he did not see the March 5 cover sheet before he provided the Memorandum to White House officials.