Whartenby v. Winnisquam School        CV-00-021-JD  03/14/01

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Jason Whartenby

        v.                                Civil No. 00-21-JD
                                          Opinion No. 2001 DNH 047
Winnisquam Regional
School District et al.


                           O R D E R


     Jason Whartenby brought suit against his former employer,

the Winnisquam Regional School District ("School District"), and

Norman Couture, Superintendent of the School District.  His

claims include state claims of breach of contract and breach of

the covenant of good faith and fair dealing, and federal claims

under 42 U.S.C.A. § 1983 for violations of his constitutional

right to procedural and substantive due process.  The defendants

move for summary judgment (document no. 26), and the plaintiffs

have filed a cross motion for summary judgment (document no. 28).


                       Standard of Review

     Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c). "[A]n issue is 'genuine' if the evidence presented is such that a reasonable jury could resolve the issue in favor of the nonmoving party and a 'material' fact is one that might affect the outcome of the suit under governing law." Fajardo Shopping Ctr. v. Sun Alliance Ins. Co., 167 F.3d 1, 7 (1st Cir. 1999).

The court takes the record evidence in the light most favorable to the nonmoving party. See Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999). The court must consider the record as a whole, and may not make credibility determinations or weigh the evidence. See Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. at 2110-11 (internal quotation omitted).

When parties file cross motions for summary judgment, "the court must consider each motion separately, drawing inferences against each movant in turn." Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See DeNovellis v. Shalala, 124 F.3d

2

298, 306 (1st Cir. 1997) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  In response to a properly supported motion for summary judgment, the nonmoving party bears the burden to show a genuine issue for trial by presenting significant material evidence in support of the claim.  <u>See</u> <u>Tardie v. Rehabilitation Hosp.</u>, 168 F.3d 538, 541 (1st Cir. 1999).  Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the nonmoving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

<u>Background</u>[1]

Whartenby began working for the School District as a classroom aide in 1995.  During the 1998-99 school year, he was assigned to work at the Union Sanborn Elementary School in the "Back on Track Room," a program for students with behavioral problems.  Students who were disruptive in their regular classrooms were sent to the "Back on Track Room," where Whartenby

---

[1]The facts in the background section are drawn from the parties' supported statements of fact and the record evidence. "All properly supported material facts set forth in the moving party's factual statement shall be deemed admitted unless properly opposed by the adverse party."  L.R. 7.2 (b)(2).  The background section does not constitute factual findings by the court.  <u>See</u> <u>Oliver v. Digital Equip. Corp.</u>, 846 F.2d 103, 105 (1st Cir. 1988).

worked with the students to identify the source of their behavioral problems and come up with a plan for correcting their behavior. Sometimes the students acted out violently and had to be physically restrained by staff.

Whartenby's immediate supervisor was Clare Mills, Director of the "Back on Track Room." In late 1998, Mills and Kathleen Fillion, a guidance counselor, noticed that Whartenby was developing a close relationship with one student, Justin B., who frequently was sent to the "Back on Track Room." Because they were concerned that Justin was acting out in class in order to see Whartenby, Mills and Fillion instructed Whartenby to work less with Justin. However, Whartenby continued to work with the student on a regular basis.

In January and February of 1999, School District officials received reports of several occasions on which Whartenby interacted with Justin and other students outside of school. Once in early December of 1998, Whartenby took Justin out for lunch after receiving permission from Justin's mother. Whartenby also took other students out to lunch or to go shopping. During the winter vacation, Whartenby passed by Justin's house without making contact with Justin, and he gave his coworkers the impression that he had looked through the windows of the house.

In late January of 1999, Justin was removed from his home

and placed in the Philbrook Center in Concord. Whartenby told his coworkers that he visited Justin there. His coworkers reported that he said he was not allowed to see Justin at first, but that he convinced Philbrook staff to let him visit by implying that he had traveled a long distance when, in fact, both the Philbrook Center and Whartenby's residence are located in Concord.

On January 28 or 29, 1999, Kathleen Fagan, then the School District's Director of Pupil Personnel Services, instructed Whartenby that contact with individual students outside of school hours was inappropriate. She suggested that he find another outlet for having a one-on-one relationship with a child, such as a volunteer mentor program. Mills testified at her deposition that Whartenby indicated to her he would continue doing what he thought was right, even if it meant getting fired.

On February 9, 1999, the "Back on Track Room" staff, including Whartenby, met and discussed the risks of seeing students outside the school context. Kathleen Fillion instructed the staff that they could not meet one-on-one with students outside of school, and that they needed to avoid one-on-one interactions in school in unsupervised, closed rooms. Shortly after this meeting, Ann Rasmussen, a guidance counselor, informed Fillion that once in November of 1998, she had observed Whartenby

in the "Back on Track Room" alone with Justin, holding him on his lap and speaking softly to him, and that Whartenby blushed when he noticed Rasmussen watching them.

Justin was transferred to a Nashua school in February of 1999, after being placed in a home there. Whartenby inquired of both Mills and Fillion whether Justin still qualified as a student in the Winnisquam Regional School District. Mills and Fillion believed that he intended to maintain a relationship with Justin, despite their instructions to terminate the relationship. To help Justin with the transition to his new school, Mills and Whartenby went to see Justin on his first day there and to terminate their relationships with him. Before leaving the Nashua school, Whartenby exchanged telephone numbers with Justin's new teacher. Mills, concerned that Whartenby intended to maintain contact with Justin, reported what happened to Kathy Fagan, who relayed the information to Norman Couture, Superintendent of the School District.

On February 12, 1999, Couture interviewed Mills, Rasmussen, Fagan, and Fillion about Whartenby's conduct with students. He then consulted the local chief of police who, according to Couture, informed him that the behavior he described was consistent with that of a potential sexual offender. Couture called Susan Gannett, a School District employee, and asked her

6

to instruct Whartenby to come to his office instead of reporting for work on the morning of February 15, 1999. Also present in Couture's office that morning were Kathy Fagan and Susan Gannett.

Couture questioned Whartenby about the various incidents reported by Mills, Rasmussen, Fagan, and Fillion. In response to Couture's questions, Whartenby acknowledged that Rasmussen may have seen him alone in the "Back on Track Room" with a student on his lap. He said he had gone by Justin's house after school hours, but denied looking through the windows. He admitted that he had visited Justin four times at the Philbrook Center and had brought Justin a gift there. He said he had told his coworkers that he had pressured or perhaps lied to Philbrook staff to gain admittance, though he denied that any special permission was required for visitors. Whartenby also admitted providing Justin's new teacher with his telephone number and address, despite instructions not to have any further contact with Justin.

Couture then asked Whartenby to leave the room. Couture, Gannett, and Fagan agreed that termination of Whartenby's employment was proper. Couture called Whartenby back into the room, explained why he was concerned about Whartenby's conduct, and informed him that his employment was terminated effective immediately.

Couture sent Whartenby a letter dated February 18, 1999,

7

officially notifying him of his termination and the underlying reasons. The letter describes the incidents that School District staff reported to Couture, including that Rasmussen witnessed Whartenby holding Justin in his lap, that Whartenby had taken several students shopping and one (Justin) to lunch, and that he visited Justin several times at the Philbrook Center. The letter reports that Whartenby said that he peered in the windows of Justin's home, lied to gain admittance to Philbrook, and did not intend to follow Fagan's directive to stop seeing Justin outside school. The letter also relates the events surrounding Justin's transfer to the Nashua school. The letter concludes by explaining that Couture's decision to terminate Whartenby's employment was based on Whartenby's activities outside his assigned duties, prioritization of his own needs over the students' needs, insubordination, and exhibition of poor judgment.

After terminating Whartenby's employment, Couture spoke again with the local police chief, who initiated a criminal investigation. In May of 1999, Couture consulted the School District's attorney about his obligations to report Whartenby's actions. According to Couture, the attorney advised him to consult a representative at the New Hampshire Department of Education about state statutory reporting requirements in cases

8

of suspected child abuse.  Couture did so, and was advised to file a report with the Department of Education.  Couture forwarded to the Department of Education a copy of the termination letter he had sent to Whartenby.

Discussion

I.   Due Process - Liberty Interest

Whartenby complains that the defendants have denied him a liberty interest in his reputation and standing in the community as a special education aide.  He alleges that Couture both terminated his employment without cause and sent a copy of the termination letter to the New Hampshire Department of Education with actual malice and an intent to injure his ability to work in the educational field.

"[A] public employer's failure to afford a name-clearing hearing for a discharged employee is cognizable under section 1983 as a deprivation of a liberty interest only if (1) the dismissal is grounded on charges which stigmatize the employee, and (2) the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination."  Brennan v. Hendrigan, 888 F.2d 189, 196 (1st Cir. 1989) (citations and internal quotation marks omitted).  "In order to withstand a motion for summary judgment . . . [the]

9

plaintiff must proffer competent evidence that, in the course of his dismissal, defamatory assertions were made."  Id.

Whartenby asserts that he has been stigmatized by the statements contained in the termination letter that Couture wrote and sent to the Department of Education.  However, he does not explain how these statements are false or defamatory.  In the termination letter, Couture relates what School District staff reported to him and describes Whartenby's responses to his questions about those reported incidents.  The termination letter does not include speculations about Whartenby's motivations for his actions.  Instead, the letter merely relates facts the truth of which Whartenby does not dispute.  Because Whartenby does not proffer evidence that the letter's contents are false or defamatory, the defendants are entitled to summary judgment for this claim.


## II.  Due Process - Property Interest

The defendants assert that they provided Whartenby with due process when they terminated his employment and are entitled to summary judgment on this claim.  Whartenby contends that he is entitled to summary judgment because he was fired without proper notice or a hearing in violation of his constitutional right to due process.  Whartenby also argues that his right to substantive

due process was violated.


A.    Substantive Due Process

Substantive due process rights protect individuals from the government's arbitrary deprivation of a recognized property interest, irrespective of the fairness of the procedures implemented.  See County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998); Amsden v. Moran, 904 F.2d 748, 753-54 (1st Cir. 1990); Newman v. Massachusetts, 884 F.2d 19, 25 (1st Cir. 1989).  In Lewis, the Supreme Court established that for a member of the government's executive branch to violate substantive due process, his action must shock the conscience.  See Lewis, 523 U.S. at 846-47.  The facts alleged by Whartenby do not come close to describing conscience-shocking behavior, which usually involves a physical intrusion or extreme non-physical harassment.  See Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 622-23 (1st Cir. 2000) (discussing cases of conscience-shocking conduct).

Prior to Lewis, the First Circuit held that an arbitrary and capricious dismissal of a tenured teacher violates substantive due process.  See Newman, 884 F.2d at 25.  Even if the Newman standard survives Lewis, the record evidence indicates that Couture's decision to terminate Whartenby's employment was neither arbitrary nor capricious.  Couture investigated the facts

11

underlying his decision and rationally concluded that Whartenby would continue to disobey his supervisors and rely on his own poor judgment in dealing with students. Accordingly, the defendants are entitled to summary judgment for the claim based on substantive due process.

B.    Procedural Due Process

Whartenby contends that he was not provided with sufficient pre-termination notice of the charges against him or the possibility of termination. The defendants assert that sufficient notice of both the charges and the contemplated action was given during the meeting on February 15, 1999, attended by Couture, Whartenby, Fagan, and Gannett.

Before a tenured public employee may be terminated, he "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). The First Circuit has stated that in accordance with the Loudermill standard, "when an individual is faced with the potential loss of a protected interest, officials must provide the individual with notice of the charges alleged against him and any proposed action the officials intend to take, based on those charges." Cotnoir v.

12

<u>Univ. of Maine Sys.</u>, 35 F.3d 6, 11 (1st Cir. 1994); <u>accord</u> <u>Calhoun v. Gaines</u>, 982 F.2d 1470, 1476 (10th Cir. 1992). Notice of the proposed action is necessary because "[t]he opportunity to present reasons . . . why proposed action should not be taken is a fundamental due process requirement." <u>Loudermill</u>, 470 U.S. at 546.

Under appropriate circumstances, notice of charges and a proposed action may be provided during a face-to-face meeting at which an employer decides to dismiss an employee. <u>See, e.g.</u>, <u>Brasslett v. Cota</u>, 761 F.2d 827, 836 (1st Cir. 1985) (holding notification during meeting of possibility of termination, combined with an opportunity for plaintiff to rebut charges and defend his actions, satisfied due process requirements). An employer must give notice and the opportunity to respond before deciding to dismiss the employee. <u>See</u> <u>Cotnoir</u>, 35 F.3d at 11. An employer may make a preliminary decision to terminate an employee prior to a meeting with that employee, as long as the employer is prepared to reconsider that decision if the employee contests the grounds for termination. <u>See</u> <u>O'Neill v. Baker</u>, 210 F.3d 41, 48 (1st Cir. 2000) (finding no constitutional violation where decision to terminate was made prior to hearing, but was subject to revision if plaintiff contested grounds at hearing).

The record evidence in this case indicates that after

13

interviewing Whartenby and discussing the matter with Fagan and Gannett, Couture decided to dismiss Whartenby. He then informed Whartenby of his decision to dismiss him, and explained his reasons for doing so. At this point, Whartenby had clear notice of the charges against him and the prospect of termination. He had already admitted that the facts upon which Couture based his decision were accurate with some minor exceptions, and he chose not to make any further arguments against his dismissal. See Powell v. Mikulecky, 891 F.2d 1454, 1459 (10th Cir. 1989). Under these circumstances, the meeting with Couture satisfied the basic goal of pre-termination process, which is to avoid mistaken decisions by ensuring that "'there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" O'Neill, 210 F.3d at 48 (quoting Gilbert v. Homar, 520 U.S. 924, 949 (1997)).

Minimal pre-termination process is acceptable, however, only when coupled with more thorough post-termination process. See Loudermill, 470 U.S. at 546-48; Powell, 891 F.2d at 1459-60; Brasslett, 761 F.2d at 836. Neither party points to supporting evidence on the issue of whether Whartenby had access to any post-termination process, and a review of the record does not reveal such evidence. Without evidence on this point, neither party is entitled to summary judgment on the procedural due

14

process claim.

C.    Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known."  Roldan-Plumey v. Cerezo-Suarez, 115 F.3d 58, 65 (1st Cir. 1997) (quoting Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 704 (1st Cir. 1993)).  Qualified immunity depends on a two-step analysis:  "First, was the constitutional right in question clearly established at the time of the alleged violation? . . . Second, would a reasonable, similarly situated official understand that the challenged conduct violated that established right?"  Swain v. Spinney, 117 F.3d 1, 9 (1st Cir. 1997) (internal citations omitted).  Because qualified immunity is an affirmative defense, the burden of proof falls on the party asserting its protection.  See DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 35 (1st Cir. 2001).

At the time Whartenby was fired, he had a clearly established right to minimal pre-termination process coupled with post-termination process.  See Loudermill, 470 U.S. at 546-47. The reasonableness of Couture's decision to provide minimal pre-

15

termination process depends on the existence of available post-termination process.  Having failed to provide evidence on this issue, Couture has not shown that he is entitled to qualified immunity as a matter of law.

D.    Liability of School District

Section 1983 claims against a school district must rely not on a theory of respondeat superior, but on municipal liability under § 1983.  See Penney v. Town of Middleton, 888 F. Supp. 332, 340 (D.N.H. 1994) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).  Accordingly, to establish such a claim, a plaintiff "must allege that: (1) a municipal policymaker intentionally adopted a policy, implemented a training protocol or allowed a custom to develop; (2) the challenged policy, training protocol or custom caused a violation of federally protected rights; and (3) the policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the policy, training, protocol or custom."  Id.

Whartenby does not make these required allegations in his complaint.  Therefore, the School District is entitled to summary judgment on the § 1983 claims.

16

III. Punitive Damages

Whartenby seeks punitive damages from the School District and Couture. Punitive damages are generally unavailable against municipal entities under § 1983. See Doe v. Oyster River Coop. Sch. Dist., 992 F. Supp. 467, 482 (D.N.H. 1997) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 263-64 (1981)). Because a claim against a government employee in his official capacity is equivalent to a suit against a government entity, Whartenby may seek punitive damages against Couture in his individual capacity only. See Bourque v. Town of Bow, 736 F. Supp. 398, 407 (D.N.H. 1990).

IV. State Law Claims

Because the court does not grant summary judgment for the defendants on all of the federal claims, the court retains jurisdiction over the pendent state law claims.

Conclusion

The defendants' motion for summary judgment (document no. 26) is granted for both defendants as to Count IV of the plaintiff's second amended complaint. The motion is granted as to Count III in its entirety for the Winnisquam Regional School District only, and as to the substantive due process claim in

17

Count III for both defendants.  The motion is granted as to Count V for the Winnisquam Regional School District and Norman Couture in his official capacity.  The motion is denied as to Counts I and II.  The plaintiff's motion for summary judgment (document no. 28) is denied.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge

March 14, 2001

cc:  Richard C. Mooney, Esquire
     John P. Sherman, Esquire

18